Plaintiff, a minor, brings this action to recover damages on account of personal injuries. The case was tried to a jury *Page 712 
and, at the conclusion of the plaintiff's case, a motion to dismiss was made by the defendant and granted by the trial court on the ground, principally, that the plaintiff had failed to establish liability as a matter of law.
The plaintiff, a boy of thirteen, was, on July 21, 1923, injured in a collision with an automobile belonging to the defendant. The accident occurred near the city of New Rockford, this state. The defendant is an electrical contractor, engaged in the business of building and repairing telephone lines. At the time of the accident, one Ludwig was employed as foreman by the defendant, and, in the morning of July 21, left Hillsboro in a run-about en route to McKenzie county, to build some telephone lines for his employer. He was accompanied by one Sinner, also an employee of the defendant, and the defendant's son, Benny. They carried a box of tools, etc., in the car, to be used in connection with the proposed work. The defendant instructed Ludwig, before the latter left Hillsboro, to proceed to McKenzie county by way of Mayville, Finley, Cooperstown, and Carrington, and directed him to remain in Carrington over night. He followed the prescribed route as far as Finley, where he departed therefrom at the request of Sinner and proceeded to the city of McVille, in a northwesterly direction. They remained at McVille about one hour, and then left for Carrington by way of New Rockford. The Kohlmans lived east of New Rockford and, at the time of the accident, were driving in an easterly direction on the so-called Tiffany highway. About a mile east of New Rockford, they were struck by the car driven by Ludwig. The car was going west, towards New Rockford, en route to Carrington. As a result of the collision, plaintiff was injured.
The motion to dismiss made by the defendant at the close of the plaintiff's case was based principally upon the ground that the servant Ludwig had been instructed by the defendant to proceed along a certain route; that after he left Hillsboro and on his way to McKenzie county, he departed from the route, thus laid out for him, going upon a business of his own, or that of another, and that in doing so, he abandoned the business of his master and, consequently, the latter was not responsible for any tortious act committed by him during the time he was thus engaged and off the route laid out for him by the defendant. *Page 713 
The plaintiff called Ludwig to prove the employment. The defendant, over objection, elicited from Ludwig the information, under cross-examination, that he had specific instructions as to the route to be taken and that he departed therefrom. It is strenuously urged by the plaintiff that this was improper cross-examination. This question, however, does not become important unless it be held by this court that the testimony thus produced warranted a dismissal of the action upon the ground that it showed such a deviation from the employment as to amount to an abandonment thereof as a matter of law.
Hillsboro is in Traill county, in the eastern part of the state; McKenzie county is in the extreme Western part of the state, almost due west from Traill county; a part of McKenzie county extends north beyond a line due west from Hillsboro. The route prescribed for Ludwig by the defendant took the servant through Mayville, Finley, Cooperstown to Carrington, the latter being the destination to be reached the first day. Carrington is almost straight west from Hillsboro. The servant followed this route as far as Finley which is west and somewhat north of the city of Hillsboro; at Finley, Ludwig proceeded northwest to the city of McVille instead of going west and a little south, to the cities of Cooperstown and Carrington, as he had been instructed. McVille is 15 or 20 miles northwest from Finley. After the visit at McVille had ended, Ludwig and his associates proceeded to Carrington by way of New Rockford, the latter city being about 18 miles due north from Carrington. It was within 1 mile of New Rockford that the accident occurred. The deviation from the route prescribed for Ludwig took him about 18 miles north and altogether made the trip from Hillsboro to Carrington approximately 36 miles longer. Following the route prescribed, the distance from Hillsboro to Carrington is about one hundred miles. Of course, had the servant followed this prescribed route, it would not have been necessary to go through New Rockford and he would not have met the plaintiff and there would have been no collision.
No question was made in the trial court, nor is there here, respecting the power of the lower court to make the order dismissing the action. The plaintiff made no objection to the motion upon the ground that the issues of fact must be submitted to the jury; he argued the motion on the merits. There is, therefore, no occasion to consider *Page 714 
chapter 335, Session Laws 1923, or any possible bearing it might have upon any procedural question.
In order to establish the liability of a master to a third person, to whom he owes no contractual duty, for the negligent act of his servant, this burden is on the plaintiff to prove, by a fair preponderance of the evidence, that the tort-feasor was a servant of the master, working under his control, when the injury was sustained, and that the negligent act was done within the course of the employment.
The contention of the defendant is that the deviation from the prescribed route which we have described amounted, as a matter of law, to an abandonment of the affairs of the defendant, as master, and that, consequently, the later was completely absolved from liability for any act of negligence of which Ludwig may have become guilty while he was thus pursuing his own business or pleasure. The court adopted the view of counsel for the defendant and dismissed the action.
The proposition stated appears to have the sanction of judicial precedent, both in the United States and in England; and rests upon the assumption that the relation of master and servant is suspended at the moment of time when the substantial deviation commences and that, as a logical consequence, the only question of fact for the consideration of the jury is the object of the departure from the appointed course. Hence, as in this case, when the deviation and its purpose are not in dispute and it appears beyond reasonable controversy that the purpose had no connection with the duties of the servant, there is no liability, according to this view, and it is the duty of the court to dismiss the action or direct a verdict, or, if a verdict has been rendered in favor of the plaintiff, to set it aside on motion. This rule has been adopted in the English courts and in some American Jurisdictions. See Hatch v. London N.W.R. Co. 15 Times L.R. 246, — C.A.; McCarthy v. Timmins, 178 Mass. 378, 86 Am. St. Rep. 490, 59 N.E. 1038; Perlstein v. American Exp. Co. 177 Mass. 530, 52 L.R.A. 959, 59 N.E. 194; Stone v. Hills, 45 Conn. 47, 29 Am. Rep. 635; Patterson v. Kates (C.C.), 152 Fed. 481; Hesley v. Cockrill, 133 Ark. 327, L.R.A. 1918D, 115, 202 S.W. 229; Labatt Mast. So.2d ed. § 2295.
In another line of cases the rationale of the decisions seems to be that the plaintiff is not precluded from recovering merely because the purpose of the deviation had to do with something which did not concern *Page 715 
the master; and the effect of the testimony is primarily a question for the jury, unless the circumstances be such that reasonable minds could draw a single inference therefrom. In this view, it has been said, the nature or quality of the deviation is one of "degree," and the principal question is whether the departure from the instructions indicates merely disobedience or want of faithful attention to duty, or shows a complete abandonment of the master's business. See Williams v. Koehler,41 App. Div. 426, 58 N.Y. Supp. 863; Jones v. Weigand, 134 App. Div. 644, 119 N.Y. Supp. 441; Riordan v. Gas Consumers' Asso. 4 Cal.App. 639,88 P. 809; Chicago Consol. Bottling Co. v. McGinnis,86 Ill. App. 38; Weber v. Lockman, 66 Neb. 469, 60 L.R.A. 313, 92 N.W. 591; Ritchie v. Waller, 63 Conn. 155, 27 L.R.A. 161, 38 Am. St. Rep. 361, 28 A. 29.
The undisputed testimony shows that the injury occurred after the visit at McVille had taken place and while the servant was on his way back to Carrington, the designated destination for that day, and back to the route which his master had prescribed for him. The rule has been adopted in many American jurisdictions that the master may be held liable for acts of negligence of his servant committed after the personal business of the latter has been concluded and while he is returning to the place where he departed from the designated course. In such circumstances the acts and conduct of the servant may be deemed to have been within the course of his employment. See Labatt, supra, § 2298; and Quinn v. Power, 87 N.Y. 535, 41 Am. Rep. 392; Geraty v. National Ice Co. 16 App. Div. 174, 44 N.Y. Supp. 659, 2 Am. Neg. Rep. 624,160 N.Y. 658, 55 N.E. 1095; Jones v. Weigan, 134 App. Div. 644, 119 N.Y. Supp. 441; Patterson v. Kates (C.C.) 152 Fed. 481; Weber v. Lockman, 66 Neb. 469, 60 L.R.A. 313, 92 N.W. 591. See also Lee v. Pierce, 112 Okla. 212, 239 P. 989; Appalachian Power Co. v. Robertson, 142 Va. 454, 129 S.E. 224; Dalrymple v. Covey Motor Car Co. 66 Or. 533, 48 L.R.A.(N.S.) 424, 135 P. 91; Dennis v. Miller Auto Co. 73 Cal.App. 293, 238 P. 739.
What was the servant employed to do? He was defendant's foreman and was on his way to do his master's work in McKenzie county. This statement does not fully cover the situation. The servant was, when the accident occurred, engaged in the master's business in that he was *Page 716 
hauling his equipment and a fellow servant to McKenzie county. While on the way to McVille — the end of the detour — he was still proceeding in a general direction which would lead him to his objective.
The rule that the master must respond in damages for injuries inflicted by his servant while within the course of the employment, has been explained or rested upon a great variety of grounds. It would be neither practically possible nor substantially useful to recanvas territory which has been surveyed many time by nearly every court of last resort in the land. We have heretofore said that the underlying philosophy of the Workmen's Compensation Act is that industry, not the individual, shall bear the risk of injury to the laborers engaged therein. Altman v. North Dakota Workmen's Comp. Bureau, 50 N.D. 215, 195 N.W. 287. There is always present the possibility of injury to employees, notwithstanding every conceivable precaution may be taken to guard against it. So it is when we look at the situation from the viewpoint of the public. There is an ever present probability that third persons will suffer injury because somebody's servant is careless, disobedient, or unfaithful to his master. This is a real, not an imaginary risk, to which bear abundant witness the development of the doctrine of respondeat superior and the myriad cases where courts have been lost in the mazes of metaphysical refinement in definition between frolic and detour. This latter risk to the public is clearly one which industry, or the analogy of the Compensation Acts, may well be required to carry, within reasonable bounds. He who employs a servant and puts under his control an automobile must know, as everyone knows, that it is not improbable that he will, on occasion, depart from strict instructions. As a fact of practical experience, this is beyond dispute; and that it does result in injury to the public, the growing number of cases, involving attempted distinctions between frolic and detour, clearly shows. Such a departure from the path of duty may become so great as to amount to an abondonment of the service in the minds of all reasonable men; it should then be a question of law for the court. On the other hand, there is an area, beyond and around the place within which the strict terms of the employment require the servant to remain, into which common experience with and observation of human nature suggest that he will, as inclination dictates, probably go; that is a risk which properly belongs to the business, and injury to the public by the servant *Page 717 
while within this area, should ordinarily be accepted as a burden upon the industry itself. Whether the servant is within this permissible "zone" of deviation — permissible only in the sense that he is still within his employment — depends on the facts. See Eakin v. Anderson, 169 Ky. 1, 183 S.W. 217, Ann. Cas. 1917D, 1003; Dockweiler v. American Piano Co. 94 Misc. 712, 160 N.Y. Supp. 270. The facts may be such that reasonable minds could draw but one conclusion; the question would then be one of law for the court. We are of the opinion, in the case at bar, that reasonable men might well reach different conclusions as to whether the servant was within the area of probable deviation and, therefore, within his employment, when the accident occurred. That question should have been submitted to the jury. See generally Duffy v. Hickey, 151 La. 274, 91 So. 733; Riley v. Standard Oil Co.231 N.Y. 301, 22 A.L.R. 1382, 132 N.E. 97. In the latter case it was said that the servant who has deviated from the strict line of duty does not resume the employment only "when he reaches a point on his route which he necessarily would have passed had he obeyed his orders. He may choose a different route back." (Emphasis is ours.) See also article in 23 Columbia L. Rev. 444, and 716, on Frolic and Detour.
We think that the foregoing rule is sound and should be applied to the facts in the case at bar. It must be borne in mind that Ludwig was charged with the duty of taking equipment for his master and two men to McKenzie county, for the purpose of there constructing or repairing telephone lines and equipment. It may be conceded, for the sake of the argument only, that had the injury occurred while he was on his way to McVille, and after he left the prescribed route, there would have been no liability, as a matter of law, for the reason that he embarked on an adventure of his own and departed to such an extent from his duties as to terminate or suspend temporarily the employment. The primary question is whether the servant was, at the time of the accident, performing any act in furtherance of his master's business. He was undeniably en route back to the course from which he departed and to the designated place where he and his associates had been directed to remain for the night; in other words, he had resumed his purpose to go to McKenzie county, and was carrying equipment and passengers in the master's conveyance, and on the master's business. The correct test is whether the negligent act was committed in the course of the *Page 718 
servant's employment, or outside of it. We believe that the testimony in this case is fairly susceptible to the interpretation that the servant was within the course of his employment at the time of the collision. In other words, we do not think that the court was warranted, as a matter of law, in holding that the accident occurred while the servant was entirely upon his own business and outside the course of the employment, and, that this question should have been left, in the circumstances here disclosed, to the determination of the jury. Whether the servant Ludwig had completely departed from or abandoned the defendant's service at the time of the accident, was, in all the circumstances, a question of fact to be resolved by the jury under appropriate instructions as to the law.
Our conclusion upon this point makes it unnecessary to consider the other assignments of error made by the appellant, as it is not likely that they will arise upon another trial.
The judgment is reversed and a new trial ordered.
CHRISTIANSON, Ch. J., and NUESSLE, and BIRDZELL, JJ., concur.