MARGARET HEDINE, Respondent, v. THEODORE MEYER, August P. Meyer, and Irving Moulthrop, Copartners, Doing Business under the Tradename and Style of the Minot Steam Laundry, Appellants.

(224 N. W. 906.)

Opinion filed April 6, 1929.

*Conmy, Young & Burnett,* for appellants.

*McGee & Goss* and *Sinkler & Brekke,* for respondent.

BURKE, Ch. J. This is an action for personal injury in which there was a judgment for the plaintiff and the defendant appeals.

The defendant is a copartnership engaged in the laundry business, in the city of Minot, North Dakota. On the 7th day of July, 1926, the defendant had in its employ one Alfred Lauber, whose duty it was to drive the defendant's truck in collecting, and delivering laundry; that on said date there was a collision between the defendant's truck and an automobile in which the plaintiff was riding and, as a result of the collision, the plaintiff was injured.

There are just two questions involved on the appeal: First, It is the contention of the appellant that there is no evidence showing that

the driver of defendant's truck was acting within the scope of his authority and that, on the contrary, the evidence shows that he was using the truck for his own pleasure; Second, that the court erred in overruling the defendant's objections to the following questions, on rebuttal:

Mr. Goss: Q. I will ask the impeaching question: At that time did Mr. Lauber, the witness, who has heretofore testified, say that he was at the time of this accident still delivering laundry?

Mr. Burnett: Objected to on the grounds it is incompetent, irrelevant and immaterial, and not binding on this defendant, and not a proper method of proving agency.

The Court: Overruled. You may answer.

Q. Did he tell you he was delivering in that part of town?

Mr. Burnett: Same objection.

The Court: Overruled.

A. Something to that effect.

Q. What reply did Mr. Lauber make to that inquiry? What did he say?

Mr. Burnett: Objected to as incompetent, irrelevant and immaterial and not binding on these defendants and improper rebuttal.

The Court: Overruled.

Mr. Burnett: Not a proper impeaching question.

A. He said he was delivering laundry.

On the first question, i. e., was Lauber acting within the scope of his authority, Theodore Meyer, one of the members of the copartnership firm, testified that Alfred Lauber was employed at the time as driver of the truck; that his duties were calling for, and delivering laundry; that there was no exact time for closing the laundry, "but usually around six o'clock is our quitting time"; on that date I quit about seven o'clock and the help had all gone; so far as I know Lauber had quit; he kept the laundry truck at his sister's place on Second Street Southwest; I never permitted him to use it for his own pleasure; it was not any part of his business to take Walter Reed to the fair grounds.

Q. Did they sometimes deliver laundry later in the evening, after six o'clock?

A. Well, that is seldom. Might be.

On cross-examination, he testified as follows:

Q. If there had been laundry to deliver he would have been authorized to deliver it after that time of night?

A. If the drivers find it necessary to deliver a package they do so.

Q. And if there had been laundry to accumulate he would have been authorized to get it at that time of night?

A. Sometimes we get a call, yes.

Q. So far as his employment goes, there is no strict, set hours for his employment?

A. No.

Alfred Lauber had testified: "I quit at six o'clock, drove to the rooming house and Walter Reed, another employee at the laundry, was just coming out of the house; I asked Reed where he was going and Reed said he was going to the fair grounds to get his car; I said to him, jump in and I will take you out there, and that it was on this trip to get Reed's car that the accident happened."

Immediately after the accident, William Bakeman, a traffic policeman, appeared and viewed the scene of the accident. He testified that he examined the tracks of the automobiles and that they showed that the automobile in which the plaintiff was riding was driven on the right side of the road while the tracks of the laundry truck were on the left side of the road; he noticed that there was a bundle of laundry in the laundry wagon which he took out and took to the Minot Steam Laundry, the defendant, and at that time he had a talk with Mr. Meyer. He said: I told him the laundry truck or the driver had run into another car and asked him if his truck driver was drunk and he (Meyer) stated he did not think so. I left the laundry there; I think I gave it to Mr. Meyer.

Guy Sharar, another traffic officer, testified that he was at the scene of the accident; that he examined the tracks of the truck and the car; that it was his duty to look and ascertain how the trouble arose; that the track made by the Hooper car was on the right hand side of the

road, as far over as he could get and the tracks of the truck showed that it was driven on the left hand side of the road. This testimony in reference to the tracks is corroborated by Mr. and Mrs. Hooper, and the plaintiff, while Lauber and Walter Reed testified that the car in which the plaintiff was riding was driven on the left hand side of the road and Lauber was obliged to drive on the left hand side to avoid a collision.

It appears from this evidence that the defendant was the owner of the car, and that Lauber was employed by the defendant to drive the car; that Lauber had authority to use the car any time for the collection, and delivery of laundry, and that immediately after the accident the policeman took a bundle of laundry out of the laundry truck, took it to the defendant's place of business and there delivered it to the defendant; that he told Mr. Meyer that "his driver had run into another car; " that he asked Meyer if his driver was drunk, and Meyer merely stated that he thought "his driver was not drunk." A prima facie case is established for the plaintiff on such facts and circumstances.

"In action for personal injuries arising from negligent operator of motortruck prima facie case of driver's agency for owner of truck will stand, in absence of substantial proof to contrary: term, 'Substantial,' including terms 'credible' and 'trust-worthy'." Perry v. Paladini, — Cal. App. —, 264 Pac. 580.

Wagnitz v. Scharetg, — Cal. App. —, 265 Pac. 320; Kruse v. White Bros. 81 Cal. App. 86, 253 Pac. 182; Crain v. Sumida, 59 Cal. App. 596, 211 Pac. 479. The presumption or inference is not overcome, as a matter of law, by the testimony of the driver that he was engaged in a mission or enterprise of his own. Clark v. Feldman, ante, 741, 224 N. W. 167.

In the case of Randolph v. Hunt, 41 Cal. App. 741, 183 Pac. 361, the court said: "It cannot be said here that the jury was bound to accept the statement of said witnesses as true. Being the exclusive judges of the weight of the evidence and the credibility of the witnesses, if the testimony did not carry conviction to their minds they had the legal right to reject it. We must assume that they did not believe the story, and we cannot say, in the absence of any showing to

the contrary, that the jury acted arbitrarily, or otherwise than in good faith and with an honest purpose. We would not be justified by the record in branding the statement of these witnesses as false, although there are certain circumstances that tend somewhat to discredit it, but we are not in a position to interfere with the jury's discretion in that particular."

Ferris v. Sterling, 214 N. Y. 249, 108 N. E. 406, Ann. Cas. 1916D, 1161; 39 C. J. 1284, and cases cited. Sina v. Carlson, 120 Minn. 283, 139 N. W. 601, wherein it is held that the testimony of both the owner and driver of a team that the driver was acting without authority from the owner is not conclusive. Where there is no other direct evidence on that subject facts and circumstances may overcome the direct testimony. Crowell v. Duncan, 145 Va. 489, 50 A.L.R. 1425, 134 S. E. 576; Dregier v. Kramer, 292 Pa. 9, 140 Atl. 532.

In addition to the ownership and the employment of the driver Lauber, there is, in the instant case, the testimony that Lauber had authority to deliver, and collect laundry, at any time; that he did not have authority to use the car for any other purpose and that there was laundry in the car at the time of the accident which certainly makes a stronger prima facie case than any of the cases cited. We are of the opinion that the evidence and the circumstances warranted the trial court in submitting to the jury the question of whether the driver of the defendant's truck was acting in the scope of his authority at the time of the accident and that the verdict is conclusive.

It is the contention of the appellant that the impeaching questions were not submitted to the witnesses as they were asked of the driver of the laundry wagon. In cross examination Mr. Lauber denied that he was delivering laundry at the time of the accident and was then questioned as follows:

Q. Do you remember of seeing Mr. and Mrs. Hooper about the front of the Leland Hotel last year, or thereabouts, and having a talk with them about what you were doing at that time?

A. I think I remember of seeing them there, yes.

. . .

Q. And at that time, sir, Mr. and Mrs. Hooper asked you whether you were delivering laundry at that time?

A. They might have, I do not remember.

. . .

Q. And they asked you, did they not, if you were not delivering laundry that night?

A. No.

Q. You are certain.

A. Yes.

Q. You had some laundry in the car?

A. I may have had a package or two there.

Q. Where were you going with that?

A. I often have laundry in the truck. I did not have anybody out there to deliver to.

Q. That was what day of the week?

A. Monday.

Q. How did you have laundry to be delivered in your car Monday night?

A. We might have had some over from Saturday.

Mr. Hooper is asked about the same conversation and he says: "I asked him if he was on duty this evening the accident happened," and he said: "I sure was."

Q. And what did he say about that?

A. He said he was on duty.

Q. Did he say where he was going?

A. He did not say exactly where he was going, he just said he had some bundles to deliver.

Q. In what part of the city, did he say?

A. In that end of town, he did not say where.

Mr. Burnett moved to strike out the statement "that he was still on duty as being a conclusion of the witness, and not binding on the defendant—not a proper method of proving agency." Mr. Goss: "It is for the purpose of impeachment."

The objection is only to one answer—that is to the statement that Hooper said Lauber made in the conversation that *he was still on duty at the time of the accident,* on the ground that it *"is a conclusion of*

*the witness and that it is not the proper way of proving agency."* There was no objection that it was not proper impeaching testimony. The objection was to the testimony and not to the question. It is not a conclusion of the witness but it is a statement of the witness of what Lauber said in the conversation in front of the Leland Hotel and the objection was properly overruled. Mrs. Hooper testified that she was with her husband at the Leland Hotel when and where the conversation was had with Lauber.

Q. At that time did you hear your husband make an inquiry of Lauber as to whether he, Mr. Lauber, was delivering laundry at the time of the accident, or not?

A. Yes sir.

Q. What reply did Mr. Lauber make to that inquiry? What did he say?

A. He said he was delivering laundry.

Mr. Burnett made the objection that it was not a proper impeaching question, which objection was overruled by the court. The information called for and received in the answer is the information asked for from the witness Lauber; the time and place and subject matter is identified by all the parties; it was proper impeaching testimony and there was no error in its admission.

The judgment of the trial court is affirmed with costs.

CHRISTIANSON, BIRDZELL, NUESSLE, and BURR, JJ., concur.