[File No. .6366.]

JAY BODLE, Margaret Bodle, Nate Bodle, by J. R. Bodle, His Guardian ad Litem, Respondents, v. PAUL WENNER et al.

THE INTERNATIONAL HARVESTER COMPANY, OF AMERICA, a Foreign Corporation, Appellant.

(266 N. W. 894.)

Opinion filed April 1, 1936.   Rehearing denied May 2, 1936.

*A. W. Aylmer,* for appellant.

504

*J. A. Coffey,* for respondents.

BURR, J. These appeals involve an automobile collision in which the three plaintiffs were injured. Each commenced an action against the same defendants, and for convenience the actions were tried together. No service was obtained on the defendant Gross. During the trial the actions against Jean Wenner were dismissed. The jury found against the defendants Paul Wenner and the International Harvester Company. Appropriate motions for judgments notwithstanding the verdict or for new trials were made and overruled. Judgment was entered against Wenner and the International Harvester Company and the company appeals.

The pleadings raise the questions of negligence of the defendant Wenner, imputable to the defendant company, and of contributory negligence. These issues were resolved against the defendants. Reduced to the last analysis, the issue is one of fact—the responsibility of the defendant company.

The record shows C. H. Gross was field collector for a certain portion of the Aberdeen, South Dakota branch of the Harvester Company. This branch had territory in North Dakota bounded on the north and northeast by a line from Milnor to Adrian, west from there to Streeter and the Missouri river, and south into South Dakota. The territory did not include the portion of North Dakota north of these lines and, therefore, did not include Millarton and Jamestown, which were in the territory of the Fargo branch. The territory assigned to Gross was the "territory of Adrian, Dickey, LaMoure, Fullerton, N. D. and territory tributary to those towns." His duties were to call on farmers and dealers within his territory and make collections within the district definitely assigned to him; but he had no authority to transact any business outside of that territory. He was required to furnish his own car and received mileage when using it in the service of the company.

The defendant Paul Wenner was an implement and garage dealer in Dickey. In September, 1933 Gross called on him to collect a check given to defendant company and not paid for want of funds. Wenner was unable to make the check good unless he could collect from his

debtors, and on the morning of the 28th he and Gross left in Gross's car to call on some of them. They made three or four calls south of Dickey. Wenner succeeded in getting a check for $36.00 from one of his debtors and another for $29.00 from another debtor.

The record is silent as to the bank or banks on which these two checks were drawn. There is nothing to indicate they were drawn on any bank in Jamestown—the inference is against this—and they were not cashed in Jamestown.

Wenner gave Gross the $29.00 check to apply on the debt to the company, but kept the $36.00 check at that time. They drove back to Dickey and then went out again in Wenner's car to try to collect from Wenner's debtors. The defendant company had no interest in any of these debts. On this second trip no work was done by Gross for the International Harvester Company. Both Wenner and Gross say Gross was trying to help Wenner collect on his debts.

There was a commemorative celebration in Jamestown that day. After dinner Wenner told Gross that if he would go into Jamestown with him to celebrate he would turn over the $36.00 check to apply upon the account, but otherwise he would not. Wenner may have wanted also to get some "parts" in Jamestown, and it may be he hoped to meet a debtor there. Gross told him he did not want to go to the celebration, that he would rather stay in his own territory and work it. However, in order to get this $36.00 check he decided to go to Jamestown with him. They remained in Jamestown until about dusk. Neither transacted any business in Jamestown, and the company had no business there for Gross to transact. Up to this time Wenner drove his own car. Gross says Wenner got drunk while there, and in order to get him out of Jamestown he took the keys of the car away from him. Both got into the car and drove south from Jamestown on their way back to Dickey, purposing possibly to make a call at Sydney. Gross had been drinking also. The only relationship between Wenner and the company was that of debtor and creditor. The company did not own the car nor hire it. Neither did it have any interest in Gross's car, and there is nothing to indicate or suggest that the company knew of this trip to Jamestown, authorized it, or at any time authorized Gross to use any car but his own. Though Gross drove

on the return trip, he was a mere guest of Wenner and was driving it for Wenner. It was at this time the accident took place, some twelve miles south of Jamestown and outside of the territory assigned to Gross.

It is true that in general the relation of master and servant existed between the company and Gross on the day of the accident. Where one has the right to prescribe the direction, means, and method of the work and controls and directs another in the discharge of his duties, one whom he may discharge at will, the relation of master and servant exists. Minneapolis Iron Store Co. v. Branum, 36 N. D. 355, 162 N. W. 543, L.R.A.1917E, 298; Cook v. Sanger, 110 Cal. App. 90, 293 P. 794. But this is only while the employee is attempting to carry out his contract. He is not a slave.

Where one causing injury is such an employee, the mere fact the employer did not furnish the car does not in itself relieve the employer from liability. Ryan v. Farrell, 208 Cal. 200, 280 P. 945; Altoonian v. Muldonian, 277 Mass. 53, 177 N. E. 830.

But to make the employer liable it is as necessary that the employee be acting for the master in the master's business at the time of the accident as that he be an employee. McCraner v. Nunn, 129 Kan. 802, 284 P. 603; Zarn v. Dominique, 39 Ohio App. 442, 177 N. E. 850. As said in Lima R. Co. v. Little, 67 Ohio St. 91, 65 N. E. 861:

"The test of a master's liability is not whether a given act was done during the existence of the servant's employment, but whether such act was done by the servant while engaged in the service of and while acting for the master in the prosecution of the master's business.

"A master is not liable for the negligent act of a servant or employee if, at the time of the doing of such act, the servant or employee is not then engaged in the service or duties of his employment, although the act be one which, if done by such servant or employee while on duty and at a time when actually engaged in his master's service, would be clearly within the course and scope of the usual and ordinary duties of such servant or employee."

That one is an employee in general does not say that he is always acting as an employee until discharged. The relationship of employer and employee must exist at the time of the accident, in the work for

which the car was being driven. Even though he is an employee, in the sense that his employment has not been terminated, nevertheless his acts do not bind the employer unless they are within the real or apparent scope of his authority. As said in Erickson v. Foley, 65 N. D. 737, 262 N. W. 177, 179, any recovery against this appellant is based upon the doctrine of respondeat superior. "Where there is no conflict in the evidence or the presumptions that may reasonably be drawn therefrom, the scope of authority of one driving an automobile belonging to another is a question of law for the court."

We had occasion in the case of Ignatowitch v. McLaughlin, ante, 132, 262 N. W. 353, 361, to define the conditions under which the employer is liable for an injury caused by the negligence of a salesman while driving his own automobile, and we show there that the servant "must, at the time, have been acting within the scope of his employment in performing an act for his employer's benefit. It must also appear that the automobile was used in the employer's business with his knowledge and assent, and under his direction and control." In this case cited the defendant was an independent contractor rather than an employee; but the rule is the same. In the case at bar the employee was not on his employer's business, did not use his employer's car or any car authorized by his employer, and was not even on Wenner's business when the accident took place. They had attended a celebration; they were on their way back to Wenner's home where Gross's car was left. There is no evidence whatever tending to show the employer had any knowledge of the use of Wenner's car. The record shows a specific written contract with Gross to use his own car.

In Grissim v. A. C. Blumenthal & Co. 76 Cal. App. 712, 245 P. 768, we have a case where the employee went from his place of employment on a holiday to get his automobile and other property, without being directed to transact and without transacting any business there. It was held that he was "not performing duties within his employment, so as to make his employer liable to a person injured by him during his return."

In his memorandum opinion the trial court cites the case of Kohlman v. Hyland, 54 N. D. 710, 210 N. W. 643, 50 A.L.R. 1437. In that case the employee was engaged in the employer's business generally.

He was driving the employer's car on a trip directed by the employer, following in general the route laid out for him. The only question involved was whether there was such deviation as to temporarily interrupt the relationship of master and servant. Whatever may have been the deviation, there was no question but what the employee was actually on his way back to the route laid out to carry out the business for which he was employed. There is no similarity between the cases, and the rule laid down therein does not apply to the case at bar.

Appellant's motions for judgments notwithstanding the verdict should have been granted. The judgments against the company are reversed and the actions dismissed.

BURKE, Ch. J. and NUESSLE, MORRIS and CHRISTIANSON, JJ., concur.

BURR, J. (On petition for rehearing.) The respondents' petition for a rehearing, earnestly urging the record shows that at the time of the accident not only was Gross an employee of the company, but that he was acting for his employer at that time in the prosecution of the employer's business and in a vehicle whose use, though not authorized directly by the employer, was such as the employee was authorized to use.

In the main opinion we called attention to the fact that the employer is not necessarily relieved from liability because it did not furnish the car itself. That is not the controlling feature. "The action is deemed to be maintainable or not maintainable according as his use of the instrumentality was or was not expressly or impliedly authorized by the master" when the other circumstances involved are consistent with or require the inference that the tort complained of was within the scope of the servant's employment. Kennedy v. Union Charcoal & Chemical Co. 156 Tenn. 666, 672, 4 S. W. (2d) 354, 57 A.L.R. 733; quoting from Labatt, Mast. & S. 2d ed. p. 688.

In McCaughen v. Missouri P. R. Co. (Mo. App.) 274 S. W. 97, a servant, while on the master's business, used his individual automobile and injured the plaintiff. The court held, "the mere fact that an automobile was used by the servant on one occasion in the business of

the master, unaccompanied with any evidence of similar acts in the meantime, does not justify the inference that the servant was later authorized to use the machine upon the master's business."

Under the contract between Gross and the company Gross was to furnish his own automobile. It is true that the general manager of the Aberdeen district did testify that if Gross should happen to collect a debt outside of his own territory or in any other manner than authorized by his contract, the company would accept the money; but that is not the test of liability of the company.

The decisive points are that in the case at bar the employee was not on the master's business when the accident took place, and that not only was he not using the instrumentality authorized, but there is no proof that the company knew he was using Wenner's car, and it had no control over it. As shown in Gibson v. Dupree, 26 Colo. App. 324, 144 P. 1133, where the automobile causing an injury belonged to or was under the control of the master, and the servant while acting within the scope of his employment used such car contrary to instructions, the master would be liable; but such is not the fact here. And even in this case cited it is pointed out "that one may be in the service of another and yet at times attend to business or pleasure for himself, and acts done while the servant is at liberty cannot render the master liable; . . ." 144 P. 1136.

As we have shown, the liability of the master does not necessarily depend upon the record title to the automobile in question. That is not the test of liability; neither is the matter determined solely by the fact that at the time of the accident the servant may be engaged in the master's business. Even though a servant may use his own automobile in the service of the master, the master cannot be held liable for the torts of the servant committed in the use of the automobile, unless its use by the servant was expressly or impliedly authorized by the master. Tucker v. Home Stores (Tenn.) 91 S. W. (2d) 296.

We need not approve nor comment on the rule set forth in Reardon v. Coleman Bros. 277 Mass. 319, 178 N. E. 638, 639, viz.:

"The test to determine whether the owner while driving his own automobile is acting as proprietor or as servant of another is whether he is in control so that he can at any time stop or continue and deter-

mine the way in which it shall be used or driven, not merely with reference to the result to be reached but with reference to the method of reaching that result even as to its small particulars. The vital inquiry concerns the right to control. If that right rests in the owner, he is acting as proprietor. If that right rests with another person, then he is the servant of that other person, who becomes responsible as master for the conduct of the owner. Shepard v. Jacobs, 204 Mass. 110, 112, 90 N. E. 392, 26 L.R.A.(N.S.) 442, 134 Am. St. Rep. 648; Khoury v. Edison Electric Illuminating Co. 265 Mass. 236, 238, 164 N. E. 77, 60 A.L.R. 1159; Bradley's Case, 269 Mass. 399, 401, 169 N. E. 156; Strong's Case, 277 Mass. 243, 247, 178 N. E. 637." We cite it merely to show the extent to which some jurisdictions go.

In Wescott v. Henshaw Motor Co. 275 Mass. 82, 175 N. E. 153, 155, the court upheld a directed verdict for the defendant even though the undisputed testimony showed the servant left his home in his automobile for the purpose of interviewing a customer of his employer and, though the employee received from his master an allowance for the expense of operating his automobile and a "flat weekly salary," and was subject to the direction of his employer "as to where he would go and what people he would see in reference to the sale of automobiles;" it being shown that the master had no right to direct the employee "in any particular way he should go, the course he should take, the speed of the vehicle, or his mode of driving the automobile." These were matters for the employee to determine. That is the situation here. The employee received a flat monthly salary; he received an allowance for the use of his own automobile; but even when on the master's business and using his automobile there is nothing to show that the master had any control over the automobile, could tell him where to go, or how to go, or how he should drive his car, or what speed he should use. In other words, if we were to adopt this rule, the employee in using his own car was still the proprietor of the car—not alone in the sense that he owned it, but in the sense that he controlled and directed it. If the company controlled and directed it, it would be immaterial in whose name the title stood, and in that case, so far as third persons were concerned, the master would be the proprietor of the vehicle,

and it being used in the master's service the master would be liable for its negligent use.

In the case at bar, in addition to the fact that the employee was not on the master's business at the time of the accident and the master had no authority to tell the employee how he should operate the car used, we have this very pertinent fact—that the employee was not even driving the authorized car. He was driving Wenner's car as a guest and solely, as he said, because Wenner was so incapacitated that he could not drive it himself.

The petitioners cite Vogel v. Nash-Finch Co. (Minn.) 265 N. W. 350. The issue in the case cited was whether the employee, at the time of the accident, was on the employer's business. The employee was required to provide his own car and was paid mileage for its use. At the time of the accident he was in his own territory and using his own car. He and his companions were on a trip to see a customer of the employer and the employee actually did interview a customer. While on this trip, and at that time, the accident took place. There was a strong dissenting opinion as to whether even under those circumstances the company was liable; but in any event it is in no way applicable to the situation here. It is true that in this Minnesota case the court concluded that the fact the employee had other matters in mind at the time of the accident did not settle the point, the real issue being—was he engaged in the master's business at the time of the accident.

Petitioners cite Elliason v. Western Coal & Coke Co. 162 Minn. 213, 202 N. W. 485; but there the evidence showed the driver of the truck was actually engaged in the master's business in going to the yard to deliver receipts and to haul more coal.

The case of Shotts v. Standard Oil Co. 181 Minn. 386, 232 N. W. 712, is also cited. There the issue was whether the employee was actually on the business of the master at the time of the accident. The employer owned the car involved. The employee was driving it, and the sole issue was whether at the time of the accident he was engaged in the master's business. There was evidence to show that at the time of the accident the employee was driving the car in furtherance of the

purpose for which it was furnished and was thus engaged in the master's business in accordance with the terms of his employment.

The petition for rehearing is denied.

BURKE, Ch. J., and NUESSLE, MORRIS and CHRISTIANSON, JJ., concur.