[File No. 6425.]

TOM McINTEE, Respondent, v. A. BAKER, Sole Trader Doing Business as the Minot Hide & Fur Company, et al.

A. BAKER, Appellant.

(268 N. W. 661.)

Opinion filed July 29, 1936.

*John H. Lewis,* and *Vogel & Vogel,* for appellant.
*E. R. Sinkler, G. O. Brekke,* and *B. H. Bradford,* for respondent.

BURR, J. This action to recover damages resulting from a collision between a car owned by defendant Baker and a car owned by the plain-

tiff was tried against Baker only. Judgment was rendered for the plaintiff. Motion for judgment notwithstanding the verdict was made and denied and Baker appeals.

There are thirty-three specifications of error, some with several subdivisions; but we are satisfied the undisputed facts determine the issue.

Defendant Baker was the sole owner of two businesses in Minot—one dealing largely with the sale of leather, conducted under the name of A. Baker & Co.; the other dealing with the purchase of hides, conducted under the name of the Minot Hide & Fur Company. Baker lived in Minneapolis at the time involved and S. B. Snydal managed the two businesses. Roy Reimer was an employee of the Minot Hide & Fur Company for eight to ten years and up to the present time; but had nothing to do with the leather business. His duty was to buy hides, fur, wool, and such items in an extensive territory. For this work he was furnished a "ton and half stake truck and occasionally a half ton pick up" owned by Baker and used for the Hide & Fur Company business. He was vested with considerable discretion as to the portion of his territory to be visited, was paid a regular salary, purchased hides, drew drafts on the Minot Hide & Fur Company for his purchases, and took his orders from Snydal principally. The towns of Flaxton, Bowbells, Kenmare, and Minot were within his territory.

Baker at this time owned a 1934 Chevrolet panel truck used in the leather business and involved in the collision. On a few occasions Reimer used it for slight errands around Minot, but some time prior to the accident was forbidden emphatically by Snydal to take that truck or use it.

On Saturday, July 27, 1935 Snydal drove this Chevrolet truck on the business of Baker, coming into Minot from Dickinson about 10 or 10:30 P. M. of that day with a thousand to fifteen hundred pounds of leather. He put the truck in the garage without unloading the leather. The next morning, about noon, he left Minot for Lake Metigoshe.

About 5 P. M. of Saturday Reimer, who had been out on his territory, came into Minot with the truck which was under his control and placed it in the garage. The next day Reimer learned of a ball game to be played at Bowbells. He met two friends in the town of Minot, Amundson and Spain, and decided to go to Bowbells to attend the ball

game. Without obtaining permission of Snydal or Baker, neither of whom was in Minot at that time, and without the knowledge or consent of either of them, he took this Chevrolet truck and, without unloading the leather, he and his two friends drove to Bowbells to attend the ball game, leaving Minot about 1 P. M. Upon their arrival in Bowbells they stopped at the meat market of one Migge to get some bologna. On entering the shop Reimer asked Migge "How is the hides?" and Migge told him that they had some and asked him when he was coming up. Reimer told him that probably he "would be there sometime the coming week to pick them up." Besides attending the ball game Reimer and his two companions drove around Bowbells, then to Flaxton to visit a young lady with whom Reimer was acquainted. While in Flaxton Reimer determined to call upon a young man by the name of Schultz, an acquaintance of his, who was also a buyer of hides and furs, and at times a customer of Baker. He did not meet Schultz, and they started on the return trip—Amundson driving, the three young men sitting together on the front seat. Neither Amundson nor Spain worked for Baker, nor were they pretending to transact any business for him. Neither Baker nor Snydal knew of their presence in the car. When a few miles out from Bowbells on their way to Minot, the collision took place.

As pointed out in Bodle v. Wenner, ante, 502, 266 N. W. 894, the liability of an employer cannot be predicated solely upon the fact that the one at fault was his employee. Neither is it a controlling factor that the car involved in the collision was owned by the employer. To render the employer liable for the acts of the employee, the latter must have been engaged in the employer's business at the time of the accident. See Kohlman v. Hyland, 54 N. D. 710, 210 N. W. 643, 50 A.L.R. 1437.

The real issue is whether Reimer was on the business of his employer at the time of the accident, that is, did the collision take place in the course of his employment. The respondent, in his brief, says this "to the respondent appears to be the only real point in the lawsuit, if there is any debatable point therein."

As pointed out in Marks v. Gray, 251 N. Y. 90, 167 N. E. 181, the test is: "If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving

at the same time some purpose of his own. Clawson v. Pierce-Arrow Motor Car Co. 231 N. Y. 273, 131 N. E. 914. If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand has been dropped, and would have been canceled upon failure of the private purpose though the business errand was undone, the travel is then personal, and personal the risk."

True this case cited involved a compensation claim, but there is no difference in principle between being "in the course of his employment" in accidents arising under workmen's compensation laws and being "in the course of his employment" in other matters involving accidents. In the New York case cited a servant informed his master that he was going to spend a holiday in another town and the master asked him while there to visit a delinquent debtor and demand payment of the debt. It was held in such case the trip was not on the master's business, the connection with the master's business was merely incidental.

Barragar v. Industrial Commission, 205 Wis. 550, 238 N. W. 368, 78 A.L.R. 679, states the rules determining whether the trip was on the master's business or the employee's on vacation. If it was the employer's business at the outset, he is still in the course of his employment ordinarily, even though he may detour somewhat for personal matters. If at the outset the trip is made for his own pleasure, he is still outside of the course of employment even though he may detour somewhat for his master's business. In effect this is the rule adopted in the case of O'Leary v. North Dakota Workmen's Comp. Bureau, 62 N. D. 457, 243 N. W. 805, and applied in Kohlman v. Hyland, 54 N. D. 710, 210 N. W. 643, 50 A.L.R. 1437, supra.

It is evident that the defendant is not liable. Reimer was not on Baker's business at the time of the accident nor at any time during that trip. It is true he took a car belonging to Baker and in that car was some property belonging to the employer; but it was not the car he was authorized to use. The property in the car was not such as the employee was authorized to buy or sell, nor did he make the trip to Bowbells in the interests of his employer. It was on an errand or mission or recreation of his own. It took place on a non-business day and there would have been no trip to Bowbells were it not that the employee and his friends desired to attend the ball game. The fact

that incidentally he may have told a customer of his employer to keep some hides and he would come for them, that he sought but did not make a friendly visit with one who was a customer of his employer, and that he was an employee and in Baker's car are the only factors which in any way connect Baker with the case. These are merely incidental. No one can read the record without being convinced without the shadow of a doubt that this trip was not a trip made in the employer's business. It was not the employer's trip, and, therefore, the employer is not liable.

Respondent says there is a presumption from the relationship, etc. that Reimer was on the employer's business, that this presumption is a matter of evidence, and though the facts from which the presumption arises may be disputed by the employer and the employee, this dispute becomes a matter of fact to be submitted to the jury to determine whether the presumption has been overcome. In support of this contention, he cites Conklin v. Sampson, 55 N. D. 375, 213 N. W. 847; Clark v. Feldman, 57 N. D. 741, 224 N. W. 167; and Hedine v. Meyer, 57 N. D. 908, 224 N. W. 906; from this jurisdiction and numerous cases from other jurisdictions.

Without discussing the question arising from the fact that it was Amundson who was driving when the accident occurred, and confining ourselves entirely to the presumption heretofore mentioned and the rules thereon laid down by this court, it will be noted that this presumption is considered for the purpose of showing that the person responsible for the accident was the agent of the employer or acting in the course of his employment because he was entrusted with the car involved for the purpose of his employment.

In the Sampson Case the car used was the one entrusted to the servant for that purpose. He had control of it for the twenty-four hours in each day, and though in the case cited the accident happened at an hour after he "was supposed to be through with his work for the day," we held that under those facts this court could not "assume from the mere fact that the accident happened out of hours" that the employee was not acting in the course of his employment. The employee was driving the employer's car entrusted to him for the purpose of his employment and at a time when he had the car under his control for

his employment, and there was nothing therefore to contradict the presumption that at this time he was on his employer's business. In the case at bar the evidence is conclusive that the car used was not the car entrusted to the employee by the employer to be used in the employer's business. Therefore, some of the basic facts on which such presumption rested are missing in this case.

In the Clark v. Feldman Case cited, there was no dispute as to the employer and the employee. The issue was whether at the time of the accident the employee was on the employer's business. There, not only was the truck owned by the defendant, but at the time of the accident it was being operated by the one who was employed for that special purpose, was operated in the manner in which such trucks are usually operated under such conditions, and, therefore, the presumption arose that the employee was in the course of his employment at the time of the accident. This being so, it became a question of fact for the jury, even though the employee may have said that at the time of the accident he was on an errand of his own. In any event this errand was merely an incident.

In the Hedine Case the facts are somewhat similar. There is no question about employer and employee. The car used was the one entrusted to the employee for the purpose of delivering laundry and the employee was operating it at the time of the accident and laundry was found in the truck. Not only this, but there was testimony that the employee said that at the time of the accident he had bundles of laundry for delivery and that he was delivering laundry at the time of the accident. We held that though the employee denied he was on the master's business at the time of the accident, this evidence raised a question of fact for the jury to determine. There was substantial evidence bolstering the presumption. We said that where the defendant was the owner of the car, and the driver of the car was employed by the defendant to drive that particular car and had authority to use it any time for the work of his employment, a prima facie case was established when it was shown that the accident occurred while he was operating that car. In support of this rule, we cited the case of Perry v. A. Paladini, 89 Cal. App. 275, 264 P. 580, to the effect that "In action for personal injuries arising from negligent operator

of motortruck prima facie case of driver's agency for owner of truck will stand, in absence of substantial proof to contrary; term, 'substantial' including terms 'credible' and 'trustworthy.'" In this California case cited the driver testified that he was not an employee of the defendant and the ownership of the truck in the defendant was denied. There was substantial, credible, trustworthy evidence contradicting this because the record showed that at the time of the accident the registration card showed the defendant to be the legal owner of the truck and this card was exhibited in the usual place thereon, the policy of insurance covering the truck was issued in the name of the defendant, and the California court held properly that the presumption the employee was on the master's business at the time of the accident, arising from the operation of an employer's car by an employee to whom it was entrusted was not overcome by substantial evidence. As a matter of fact, it was strengthened by substantial evidence.

In the Hedine Case we also cite Wagnitz v. Scharetg, 89 Cal. App. 511, 265 P. 318, to the effect that where the proof shows the car involved was owned by the defendant and "that person driving was its employee, presumption arises that such person was acting within general scope of his authority." The California case says, "such presumption is not destroyed as a matter of law by the testimony of such employee that he was acting on his personal business. The question of whether he was so acting becomes a question of fact for the jury to decide." This rule, however, must be interpreted in the light of the facts of the case. The car involved therein was one which was entrusted to the employee for the specific purpose of his employment—it was the employer's car, the operator was an employee and at the time of the accident operating the car entrusted to him for the purpose of his employment.

In the case at bar the evidence is undisputed—unless a presumption disputes it. The car involved in the accident was not any car entrusted to the employee in the matter of his employment. The presumption is only a matter of evidence at the very best. It supplies certain facts as evidence on the theory that they exist. It relieves the person relying on the presumption from the necessity of supplying these facts at the first. To say the presumption still exists when the uncontradicted testimony shows it does not exist would be to render the presumption

676

sacrosanct. True the evidence to rebut the presumption must be substantial, credible, trustworthy, and ordinarily this may be said to be a matter for the jury to determine primarily. But there must be some basis of fact in the evidence for the presumption, and when it is shown that this basis is nonexistent, it ceases to be a matter of fact and becomes a matter of law. As we say in Erickson v. Foley, 65 N. D. 737, 743, 262 N. W. 177: "Where there is no conflict in the evidence or the presumptions that may reasonably be drawn therefrom, the scope of authority of one driving an automobile belonging to another is a question of law for the court. . . ."

The weight to be attached to the presumption does not differ in quality from the weight to be attached to any evidence offered.

The facts show conclusively that the trip was not made for the employer nor in the course of employment, and this determines the issue. Consequently, it is not necessary to discuss any of the other specifications of error. The judgment is reversed and the action against Baker dismissed.

BURKE, Ch. J., and NUESSLE, MORRIS and CHRISTIANSON, JJ., concur.