[Civ. No. 4208. Third Appellate District.—November 26, 1930.]

GEORGE C. COOK, Respondent, v. C. E. SANGER et al., Appellants.

Meserve, Mumper, Hughes & Robertson and Timon E. Owens for Appellants.

Kidd, Schell & Delamer for Respondent.

MR. JUSTICE PLUMMER DELIVERED THE OPINION OF THE COURT.—The plaintiff had judgment against the defendants in the sum of $4,500 for and on account of injuries suffered by being struck and knocked down by an automobile owned by the defendant C. E. Sanger, operated by him at a time while said Sanger was acting as an em-

ployee of the defendant Lacy Manufacturing Company. From this judgment the defendants appeal.

The accident leading to the injury of the plaintiff occurred in the following manner: The defendant Sanger parked his automobile on East Fourth Street, between Los Angeles and Main Streets, on the north side of Fourth Street, about halfway up the block. Fourth Street runs east and west. There is a decided slope on East Fourth Street at the point where the automobile was parked, this slope being downhill from west to east, Los Angeles Street being lower than Main Street. The automobile was parked at about noontime. After parking the automobile, Sanger spent a few minutes in an establishment conducted by the International Electric Company. After transacting his business with the Electric Company, Sanger returned to the place where his automobile was parked, and in starting the car used a crank for that purpose. It appears that the self-starter was out of order. The crank for starting the car was in the front compartment near the gear-shift lever. Upon cranking the car it started backward, ran downhill to where the plaintiff was standing on the sidewalk near the corner of East Fourth Street and Los Angeles Street, mounted the curb and struck the plaintiff, injuring him quite severely.

Upon this appeal no question is made as to the amount of the damages awarded and, therefore, no further attention will be given thereto.

Upon this appeal it is contended, first: That the defendant Sanger was not negligent, and that the record contains no facts upon which to predicate the finding of negligence on his part; second: that the injury did not occur to the plaintiff while Sanger was within the scope of his employment as an employee of the defendant Lacy Manufacturing Company, and third: that Sanger was an independent contractor.

The record shows that for a number of years prior to the injury of the plaintiff, as herein stated, Sanger had been in the employ of the Lacy Manufacturing Company, and for a considerable period of time had been in the service of the defendant Lacy Manufacturing Company as an outside man; that is, Sanger would be sent by the Manufacturing Company to look after outside jobs or work on electric motors

outside the immediate establishment maintained by the Lacy Manufacturing Company.

The record also shows that it was the practice of the company to allow its employees the sum of seven cents per mile for traveling expenses, whether they used their own automobiles or traveled by other conveyances. The mileage allowance was always calculated by the shortest distance that could be traveled, irrespective of whether such route was or was not followed by the employee. The defendant Sanger owned his own automobile, and on the day of the accident was operating his own automobile, and was paid the sum of seven cents per mile for the shortest route between the respective points which he traveled on that day. The record likewise shows that some time previous to the accident resulting in injury to the plaintiff, the Lacy Manufacturing Company had had business dealings with the International Electric Company; that a certain motor belonging to the Lacy Manufacturing Company had been repaired by the International Electric Company, but did not operate satisfactorily by reason of some defect, presumably in the winding of the motor, and the defendant Sanger had been instructed by someone connected with the Lacy Manufacturing Company, entitled to give him orders, to call at the business place of the International Electric Company and ascertain what was wrong with the motor. Sanger, however, was not instructed to call at the International Electric Company on any particular day, but simply to stop there when convenient on some of his outside trips, or, as stated by him, the first time he was uptown.

The accident occurred on the twenty-third day of April, 1926. On that day Sanger was directed to go to a place called "Vernon" and there perform certain work in behalf of the Lacy Manufacturing Company. In pursuance of this order, Sanger went to Vernon, starting early in the morning, and remained several hours. On his way back he deviated from the most direct route, two or three blocks, and stopped at the business place of the International Electric Company to make inquiries concerning the motor which we have mentioned. The defendant Sanger testified that he left his car, when parked on Fourth Street, with the handbrake set and the control lever set in neutral; that when he came back to the car he took the implement for cranking

the motor from the front compartment of the car immediately beside the hand-brake lever and the gear-shifting lever; that he did not notice that the hand-brake had been released, or that the shift-gear lever had been moved from neutral into reverse; that after the car had started to back downhill, the defendant Sanger testified that he noticed for the first time that the car had been moved from the position in which he claimed to have left it.

While a number of cases have been cited where the questions involved relate to the interference with cars by third persons, whereby they have been started, and after so being started, caused injury; also cases concerning independent contractors, and also cases where an employee has departed from his employer's business, a statement of testimony taken principally from that given by the defendant Sanger, we think will completely answer all the questions presented upon this appeal, without any extended analysis of the cases cited by the appellant.

For some ten years or more prior to the accident the defendant Sanger had been an employee of the defendant Lacy Manufacturing Company, working as an electrician, and occasionally did work outside the plant for the company, this work consisting of repairing electrical machines. He gave all his time to the Lacy Manufacturing Company, and worked for no one else. His time began at 7 o'clock in the morning and closed at 4 P. M. He was paid so much an hour for this period, regardless of where he was. A half hour was deducted for the lunch period. It is admitted that Sanger was an employee of the Lacy Manufacuring Company on the day of the accident, and on that particular day was working for the Lacy Manufacturing Company. The defendant Sanger received full pay for his work on the day of the accident, including the seven cents a mile allowed for traveling expenses. For some time prior to the accident it was a custom of the Lacy Manufacturing Company that employees should use their own automobiles on company business, for which they were paid seven cents per mile. There was no difference in the rate of mileage allowed employees whether they used their own machines or other means of transportation.

A certain motor belonging to the appellant, Lacy Manufacturing Company, had not been operating satisfactorily

for some time. Work for the Lacy Manufacturing Company had been done by the International Electric Company. Sanger had also worked on this motor. Sanger testified that he had been directed to call at the place of business of the International Electric Company and inquire as to this motor and ascertain the cause of the trouble. Two officers of the Lacy Manufacturing Company testified that they did not have any recollection of giving Sanger such orders. Sanger testified that he was not instructed to go to the office of the International Electric Company and find out about the defect in the motor on the particular day of the accident, but was simply told to go there some time and find out about the motor. The defendant Sanger testified that he stated he would attend to it and would stop at the International Electric Company's place of business the first time he was uptown, and that the person who gave him the directions—either Mr. Ludke or Mr. Stiles—said that would be all right. It appears that the deposition of defendant Sanger was taken before the trial. In that deposition he testified that the day before the accident he had a conversation with Mr. Ludke (an officer of the Lacy Manufacturing Company entitled to give him orders) with reference to his visit to the International Electric Company, and upon the trial testified that this testimony was true. Mr. Ludke testified that he had had no such conversation with the defendant Sanger. Stiles only testified that he remembered no such conversation. Neither Mr. Ludke nor Mr. Stiles denied Sanger's testimony about the defect in the motor which had been repaired by the International Electric Company. Mr. Stiles had directed Sanger to go direct from his home (that is, the home of Mr. Sanger) to the job at Vernon on the morning of the twenty-third day of April, 1926. On that morning Sanger drove his automobile to the place in question; he went there to repair a motor for the Lacy Manufacturing Company; remained there three or four hours. Sanger left the Vernon job in his automobile with the intention of going from there to the International Electric Company so as to talk to the foreman about the motor heretofore referred to, and with the intention of going directly on to the plant of the Lacy Manufacturing Company. In doing this he was taken a few blocks off from

the shortest route between the Vernon job and the plant of the Lacy Manufacturing Company. Sanger testified: "I went to the International Electric Company place of business to have a conversation with the foreman of the International Electric Company. There was something wrong with the motor they had repaired and I went there to find out from the foreman what was wrong. The motor in question belonged to the Lacy Manufacturing Company; there was something wrong with the winding of it, and I went to find out the trouble; I had no other purpose in going there." On the trial of the action Sanger testified as follows: "I could not decide whether I went to the International Electric Company on my own business or on that of the Lacy Manufacturing Company." Sanger, however, testified that in giving his deposition he stated that he was attending to business of the Lacy Manufacturing Company when at the International Electric Company's plant, and that this statement was true at the time he made it. Sanger testified that he parked his automobile on East Fourth Street between Los Angeles and Main Streets, on the north side of Fourth Street; that he arrived there at about noon; he started to park in the red zone, then noticed this and moved up to the yellow zone; that he parked his car with the right wheel against the curb, and left the car in neutral gear with the hand-brake set. Sanger then went to the International Electric Company's office, talked with the foreman about the motor, and did nothing else while away from his car; that he remained away ten or fifteen minutes. Upon returning, Sanger approached his car from the left-hand side. The self-starter was not working, so it was necessary to use the crank. He did not look to see if the car had been moved. The crank was lying on the floor of the car a few inches from the gear-shift lever and hand-brake lever. These were in plain view as he took up the crank. He then proceeded to crank the car, which, being in reverse gear, started downhill. Sanger attempted to get on the car and stop it, but did not succeed. The car went down the hill, mounted the curb at the corner of Fourth and Los Angeles Streets and struck the plaintiff, injuring him severely. When the car started to back down the hill the defendant Sanger testified that he noticed for the first time that the car had been moved from the position in which

he had left it. Sanger testified that while the car was moving he tried to catch it; got one of his feet on the running-board, but did not get into the car or to the steering-wheel. Sanger further testified that he did not notice whether the hand-brake had been released or whether the gear-shift had been moved from neutral into reverse.

No instructions had ever been given by the Lacy Manufacturing Company as to how its employee Sanger should operate his car.

Upon this appeal it is claimed that the evidence is insufficient to support the verdict against the appellants. We think it unnecessary to insert here any other portions of the testimony, as the foregoing is sufficient to sustain the respondent's contention that it supports the following propositions from which the jury was entitled to draw the conclusion that the defendant Sanger was negligent; that he was an employee of the defendant Lacy. Manufacturing Company, and in the pursuit of its business at the time the injury resulted to the plaintiff. These propositions are listed as "A", "B", "C" and "D", and are as follows: "A. Starting the motor from a position from which he had no control over the movements of the car, without first having assured himself that the car would not be put in motion by such cranking; B. Failure to observe that the car had been moved; C. Failure to observe that the gear-shift was in reverse—it being in plain sight and a few inches from the crank which he picked up; D. Failure to observe that the brake had been released—the brake-lever being in plain sight and within a few inches from where the crank was picked up." The answer of the defendant Sanger to these propositions may be stated as follows: "I did not notice that the car was in gear; I did not notice that the brake had been released; I did not notice that the car had been moved." This, we think, is properly assigned by the respondent not only as a poor excuse, but as no excuse. Sanger, when starting his car by using the crank, was, of course, in a position where he could not have immediate control over the movement of the automobile. The very absence of this power of control would cause any reasonable person to ascertain if his car was in proper condition to be started. Every operator of an automobile knows, and we

think must be reasonably held to know, that the starting of a car when in gear, by means of using a crank, is a hazardous operation. If in forward gear, it is likely to run over the person doing the cranking. If in reverse, it would immediately go in the opposite direction and away from the control of the person doing the cranking. The record shows that Sanger did nothing to determine whether the car was in neutral gear or had been changed. Appellant claims that he did not have to do anything to determine whether the car was in neutral gear, whether it had been changed, or whether the brakes were released. This would be tantamount to saying that a person starting a car need not take any precautions whatever to ascertain whether, in so doing, he would either be endangering himself or endangering some other person. Such is not the law. An automobile is a dangerous instrument when not operated with wisdom and due caution, and anyone who fails, whether in the operation of the car after set in motion, or in the setting of a car in motion, without taking reasonable precautions to see that in so doing injury will not follow, is guilty of acts upon which a jury may find the fact of negligence, even if a court might not declare such acts negligence as a matter of law.

In this particular the appellant asks the following question: ''Is the driver of an automobile, who has set the emergency brake, left his car in neutral gear, parking it in such a manner that it could be safely started, negligent in going in front of the car to crank it in order to start it, without examining the car to see whether the gear has been shifted from neutral to reverse, and the emergency or parking brake released?'' To answer this question in favor of the appellant would be to presuppose that one starting a car is under no obligations to ascertain whether it can be safely started. It also presupposes that one who has left his car in proper condition is thereafter relieved from any reasonable exercise of judgment or precaution to see that it is in the same condition in which he left it. To answer the question in the negative also presupposes that the jury is under obligations to conclude that because a witness testifies that he left the car in neutral, the car was actually left in neutral gear. It also excludes the idea that the operator of the car was only absent therefrom ten or fifteen minutes.

It likewise excludes the idea that the occurrence all took place in broad daylight, when no third person would be likely to be tampering with a parked car. It also includes the idea that when an operator of a car picks up the crank which is lying alongside of the brake-lever and the gear-shift lever, he is under no obligation to see that they are in proper position. The answer to the appellant's question is this: The fact that an operator of a car has parked the same properly does not thereafter relieve him from taking reasonable precautions when he returns to the car to see that it can be safely started. This duty is a continuing one. In other words, the fact that one has been careful at one time does not entitle him to be negligent at another time. There is no period of time when an operator of a vehicle like the modern automobile can be excused from negligence; there must be a reasonable exercise of care and caution all the while.

The appellant cites, as we have stated, a long list of authorities having to do with the starting of parked cars by third persons. We do not need to review these authorities, as not one of them is applicable. The car in question was started by Sanger himself, and not by any other person. Nor do we need to consider the authorities cited where an employee had departed from his employer's business and was engaged in the pursuit of his own pleasure or business. The facts here, which we have cited, taken from Sanger's own testimony, show an entirely different state of circumstances. Nor is ' there anything in the contention that Sanger was using his own automobile. (*Press* v. *Industrial Acc. Com.,* 190 Cal. 114 [210 Pac. 820, 823]; *Dillon* v. *Prudential Ins. Co.,* 75 Cal. App. 266 [242 Pac. 736]; *Eng-Skell* v. *Industrial Acc. Com.,* 44 Cal. App. 210 [186 Pac. 163]; *Ryan* v. *Farrell,* 208 Cal. 200 [280 Pac. 945]; *George* v. *Chaplin,* 99 Cal. App. 709 [279 Pac. 485]; *May* v. *Farrell,* 94 Cal. App. 703 [271 Pac. 789].) These cases likewise negative the contention of the appellant that Sanger was an independent contractor.

Upon the request of the defendant, the court instructed the jury as follows: "For the purposes of this case the testimony of the witness Sanger is to be accepted by you as true in so far as the Lacy Manufacturing Company is concerned. In determining the question of its liability, as

distinguished from that of Mr. Sanger, you are to take Sanger's testimony, concerning the way the accident happened, as true. The plaintiff put Sanger on the witness-stand as his witness, and so far as the Lacy Manufacturing Company is concerned, plaintiff is bound by the testimony given by Sanger while such witness." Pursuant to this instruction it is contended that the testimony of Sanger relieves the defendant, Lacy Manufacturing Company, from responsibility. It is for this reason that we have set forth the testimony of Sanger quite extensively, which we think, if accepted as true, shows conclusively sufficient facts to support the verdict of the jury against the Lacy Manufacturing Company. ■ However, the contention of the appellant that the plaintiff is bound by the testimony of. Sanger is not tenable. Section 2049 of the Code of Civil Procedure reads: "The party producing a witness is not allowed to impeach his credit by evidence of bad character, but he may contradict him by other evidence, and may also show that he had made, at other times, statements inconsistent with present testimony, as provided in section 2052."

Taking Sanger's testimony as absolutely true, it shows sufficient facts from which the jury was warranted in concluding that he was an employee of the Lacy Manufacturing Company on the day of the accident; that at the time of the accident he was engaged in the business of the Lacy Manufacturing Company; that Sanger was guilty of negligence in starting his car without having first ascertained that it could be safely started. It was likewise within the province of the jury to conclude whether Sanger had in fact left his car in neutral and the brake set, or whether he had parked the car, climbed out of it, leaving the gear-shift in reverse when he stopped his car from going forward as he brought the right wheel thereof against the curb. It was only an assumption on the part of the witness that somebody had interfered with the gear-shift lever and the brake lever. But even if the assumption be true, the jury had ample reason for concluding that Sanger was negligent in not observing the changed position of the levers referred to.

Relying upon the following cases, to wit: *Hedge* v. *Williams,* 131 Cal. 455 [82 Am. St. Rep. 366, 63 Pac. 721, 64 Pac. 106], *Pyyny* v. *Loose-Wilds Biscuit Co.,* 253 Mass. 574 [149 N. E. 541], and *Khoury* v. *Edison Electric Illuminating*

*Co.,* 265 Mass. 236 [60 A. L. R. 1159, 161 N. E. 77], the appellant Lacy Manufacturing Company insists that the appellant C. E. Sanger was an independent contractor at the time of the injury to the plaintiff, and therefore that the appellant Lacy Manufacturing Company is not liable. We find nothing in the case of *Hedge* v. *Williams, supra,* supporting the appellant's contention. The two other cases cited by appellant, if the law of this state, would lead to a reversal. In the case of *Pyyny* v. *Loose-Wilds Biscuit Co., supra,* it appears that one Bancroft was a traveling salesman in the general employment of the defendant; that he had no regular hours of work; his time was his own; he was employed to sell biscuits; that was his sole business; he could see the patrons any time during the twenty-four hours. Bancroft was paid a salary and commission and the expense of operating the car. He carried a sample case and advertisements in the back of his Ford coupe, and they were in his car at the time of the accident. It further appeared that about 1 o'clock on the day of the accident Bancroft drove to an Elk's Field Day picnic at Fort Pond, in Lancaster, and remained there until around 4 o'clock, when he went to a weekly sales meeting in Fitchburg; that after the sales meeting, at a quarter to 5, he started, in a car, with a friend whom he had found at the picnic, to return to Fort Pond, and that the accident happened on the road between Lineburg and the Pond at Lancaster. It further appears that Bancroft did some selling until he reached the "Field Day". "That he was going back to see some of his trade; he did not have an appointment with anyone in particular; did not expect to see any particular individual, but as a whole, expected to see some of his trade there. He intended to do business with them if he should see them." Upon the above facts it was held that the defendant was not liable for the injury caused by Bancroft. The court further said that it was the duty of Bancroft, and not of the defendant, to register the automobile and obtain a license to operate it; that the defendant had no right, upon the reported facts, to direct the manner in which Bancroft should control the car; it assumed no obligations to keep the car in repair, other than was involved in its agreement to pay the expense of operating it, or so

much per mile for the number of miles that Bancroft operated the car for them in connection with his employment.

In the Edison case, *supra,* it appears that the injury was caused by an automobile, owned and operated by Eric Parnell, who was in the general employment of the defendant. The accident occurred at the intersection of two streets, after Eric Parnell had left the defendant's place of business, and at the time was proceeding to Watertown, the purpose of his trip being in connection with the defendant's installation of a certain flood-light in that place. That he had in the car a flood-light belonging to the defendant, which he was carrying to that place; that prior to the accident, Parnell had entered into an agreement with the defendant, that when traveling for the defendant he could, at his election, use his own car for transportation, or the railroads and street railways, and in either case the defendant would pay to him an amount equivalent to the railroad or trolley fare; that the defendant had no other obligation to the said Parnell in respect to said Parnell's automobile or its use, than to pay to the said Parnell an amount equivalent to that which would have been Parnell's expenses had he traveled by common carrier rather than by the use of his own automobile; that the use by Parnell of his automobile on November 17, 1925, the day of the accident, and upon the particular trip which he was taking at the time of the accident, was known to the defendant, and the use of his automobile on this trip was in accordance with the above agreement between him and the defendants. Upon this state of facts the court directed a verdict for the defendant, which was upheld upon appeal.

While these opinions are by a court of unquestioned ability, nevertheless, a few important elements have apparently been overlooked or are not mentioned in the opinions, or else there is a confusion of ideas. But giving the two cases all the weight to which they are entitled, they are directly at variance with what appears to be the settled law of this state. Nor do we think that the distinction between the control of the person operating the automobile and the mechanical control of the automobile is tenable. If one has control or the right to control the person operating the automobile, has the power of employment or

discharge, and may direct the person operating the automobile where to go and what services to perform upon his mission, and has a right to discharge the employee for any disobedience or any wrongful act while on such mission, we think the legal power of control and the relation of master and servant is established.

In the case of *Press Publishing Co.* v. *Industrial Acc. Com., supra,* we find the following applicable to the instant case: "As previously indicated, it is not the actual exercise of control, but the right of control, that is to say, the potential power of control which is important in a determination of whether or not the status of an employee or independent contractor exists." (Citing *Claremont Country Club* v. *Industrial Acc. Com.,* 174 Cal. 395 [L. R. A. 1918F, 177, 163 Pac. 209].) "One of the means of ascertaining whether or not this right of control exists is the determination of whether or not, if instructions were given, they would have to be obeyed. In the instant case it is undisputed that the Press Publishing Company had the power to hire, and the power to discharge. . . . This power of discharge made obligatory any instructions given, for it gave to the Press Publishing Company the power to require obedience to those instructions and insured their being carried out. As was held in *Western Metal Supply Co.* v. *Pillsbury,* 172 Cal. 407 [Ann. Cas. 1917E, 390, 156 Pac. 591], 'The real test by which to determine whether a person is acting as the servant of another is to ascertain whether, at the time when the injury was inflicted, he was subject to such person's orders and control and was liable to be discharged for disobedience or misconduct.' The fact that Benefiel furnished his own transportation does not, of course, affect his status as an employee." (Citing *Eng-Skell Co.* v. *Industrial Acc. Com.,* 44 Cal. App. 210 [186 Pac. 163].) . . . "It is insisted by both petitioners that because of the fact that Benefiel owned his own motorcycle, paying personally for its upkeep, gasoline, oil, etc., and also because of the fact that he carried packages and filled small orders for persons along his route in order to defray the expenses of his machine, it must be held that he was engaged in an independent calling." This contention of the appellants was held without merit.

In the case of *Ryan* v. *Farrell and Edwards-Merritt Co.*, 208 Cal. 200 [280 Pac. 945], an automobile salesman was in the general employment of the defendant; was using his own automobile at the time of the injury. The employer, nevertheless, was held liable. We take from that case the following: "In calling upon prospective purchasers Farrell used an automobile purchased from appellant on conditional sales contract, and not fully paid for and at the time he struck the automobile in which plaintiff was riding, he was returning to San Diego, his place of residence, from Pacific Beach where he had gone with the purpose of interviewing a prospective purchaser. He testified that salesmen connected with appellant generally used between 100 to 120 gallons of gasoline in a month, 40 gallons of which were furnished by appellant. If Farrell was the employee of appellant, rather than an independent contractor, and was acting in the course of his employment when he inflicted injuries upon plaintiff, appellant is not relicved of liability by reason of the circumstances that the automobile was not one supplied by it for the use of its employees, but was the private car of said employee used by him in performing service for his employer with the express or implied consent of said employer." See, also, the case of *May* v. *Farrell*, 94 Cal. App. 703 [271 Pac. 789], where a long list of authorities are cited showing that the mere fact of an employee using his own automobile while in the course of his employment in behalf of the employer, is immaterial. Hearing in that case was denied by the Supreme Court.

In the case of *Dillon* v. *Prudential Ins. Co.*, 75 Cal. App. 266 [242 Pac. 736], the employee of the company used his own automobile; his duties were to travel from place to place and collect premiums on policies, etc. The fact that the employee used his own automobile was held not to relieve the defendant from liability. The servant in that case, just as in the case at bar, was in the course of the business of the master. The opinion in this case, by Justice Langdon, cites a number of authorities supporting the conclusion reached in that case.

In *George* v. *Chaplin*, 99 Cal. App. 709 [279 Pac. 485], a similar question was before the court, and it was there held: "In determining whether the relationship is that of

independent contractor or master and servant, the real test is whether the employee is subject to the employer's order and control, and is liable to be discharged for disobedience or misconduct; and the fact that a certain amount of freedom of action is inherent in the nature of the work, does not change the character of the employment where the employer has general supervision and control thereof.'' The opinion in this case points out the distinction between one who is employed to do certain work, and where one is only accountable for the results of the work. In the instant case Sanger was in the general employment of the defendant, Lacy Manufacturing Company, and was in nowise responsible for the result of any work; he was on a mission to gain information for the benefit of his employers. The cases which we have heretofore cited are also referred to and reaffirmed in the opinion in the case of *George* v. *Chaplin.*

In the case of *Eng-Skell Co.* v. *Industrial Acc. Com., supra,* in an opinion written by Justice Richards, it was held that an agreement of employment under which the servant was to furnish a delivery truck during the term covered by the agreement, which truck he was to drive, did not affect his status as an employee. This case recites that the circumstances are no different where an employee furnishes his own automobile, and where employees furnish their own tools in other occupations carried on for the benefit of the employer.

A good case is that of *Dishman* v. *Whitney,* 121 Wash. 157 [29 A. L. R. 460, 209 Pac. 12], where it was held: "A salesman canvassing a city on a salary and commission, and using his own automobile to reach prospects, is not an independent contractor for whose negligent use of the car the employer is not responsible.''

A recent case, dealing with the questions which we are now considering, is that of *Brown* v. *Montgomery Ward & Co.,* 104 Cal. App. 679 [286 Pac. 474]. The following excerpt from the opinion shows the facts involved and their applicability here: "The defendants claim that the evidence did not show that at the time of the accident the defendant Vinje, who was driving the automobile, was acting within the scope and course of his employment. Mr. Vinje is an

accountant, he owns his automobile, and resides in Berkeley. At the time of the accident he was traveling auditor for the defendant Montgomery Ward & Co. That company maintains a store in Oakland and a chain of stores located in different parts of the state. The head auditor is attached to the Oakland store. He has an assistant. Besides that assistant, the company has two or more traveling auditors. From time to time the head auditor and the traveling auditor, as the witness testified, 'lay out a program of audits for a trip'. That program includes certain designated stores and a certain designated period for the trip. Mr. Vinje was paid a certain sum per week, and he was allowed to travel in his own automobile and the company paid him nine cents per mile.'' (Here follows a description of the places to be visited and the order in which they were to be visited.) '' . . . On Monday, about ten days prior to the accident, Mr. Vinje left his home to audit the stores located at Merced, Tulare, Hanford and Salinas. He traveled in his automobile and carried with him a typewriter and some books of instruction which were the property of Montgomery Ward Co. At about 3 o'clock on Friday, July 29, 1928, he had finished auditing the store at Salinas, which was the last store on his program, and had written out his reports. . . . As he traveled north he passed by the Oakland store, but did not stop. It was then 7:45 p. m. and the store had closed at 5 p. m. He continued on his way to his home in Berkeley and returned to the store Monday morning. While traveling between the Oakland store and his home the accident happened.'' Upon these facts it was held that the defendant was liable. It appears that the appellants did not really urge the question that Vinje was an independent contractor. In view of the authorities which we have cited, such a defense, we think, would have been untenable.

The authorities which we have cited and the cases cited in the opinions to which we have referred demonstrate that the great weight of the cases having to do with the question of employer and employee, under conditions similar to those presented, is that the employer is liable, and that where the employer has control over the employee, the fact that the employee uses his own automobile is wholly immaterial if that automobile is being used when the employee is in

the general course of his employment. In other words, the control of the man behind the wheel is control of the wheel, and that to draw a distinction between the control over the animate and control over the inanimate in fixing liability, is not either logical or a correct statement of the law. It could not very well be argued that an employer is not liable where a mechanic negligently drops a hammer and injures a third person, because the hammer happened to belong to the mechanic. With no more consistency can it be argued that an employer is not liable for the negligent operation of an automobile, in the course of his employment, simply because the automobile belongs to the employee. The Lacy Manufacturing Company knew that Sanger, in going to Vernon, where he had been directed to go in the service of the company, would use his own automobile, and the same company also knew that whenever he stopped at the International Electric Company it would be sometime when he was "up-town" with his automobile, and would be in the course of his general employment.

The facts which we have set forth, and the authorities which we have cited, we think, establish beyond question the liability not only of the appellant Sanger, but also of the appellant Lacy Manufacturing Company, a corporation.

The judgment of the trial court is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 26, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 22, 1931.