ROBERT A. HUSTED, JUNE R. HUSTED AND
TODD ELLERY HUSTED, AN INFANT BY ROB-
ERT A. HUSTED, HIS GUARDIAN AD LITEM,

*Plaintiffs and Respondents,*

vs.

FRENCH CREEK RANCH, INC., A WYOMING
CORPORATION,

*Defendant and Appellant,*

AND

LYLE EDGAR WEIR AND JACK SPENCER,

*Defendants.*

(No. 2819; January 6th, 1959; 333 Pac. (2d) 948)

308

For the defendant and appellant the cause was submitted upon the brief of Robert S. Lowe and Dudley D. Miles both of Rawlins, Wyoming, and oral argument by Mr. Lowe.

For the plaintiffs and respondents, the cause was submitted upon the brief and also oral argument by Kenneth W. Keldsen of Rawlins, Wyoming.

Before Blume, C. J. and Harnsberger and Parker, JJ.

## OPINION

Mr. Justice HARNSBERGER delivered the opinion of the court.

An automobile in which plaintiffs were riding was traveling east on U. S. Highway 30 when it was struck broadside by a pickup truck and as a result each of the plaintiffs received injuries. In their action to recover damages, judgment was rendered jointly against defendants Weir and French Creek Ranch, a corporation, pursuant to verdict of a jury awarding Robert A. Husted $1,000, June R. Husted $18,500, and Todd Ellery Husted $106.25 damages, and assessed costs against those defendants in the sum of $107.49. From this judgment defendant French Creek Ranch, a corporation, appeals. The further judgment rendered in favor of defendant Spencer was not appealed.

At the time of the collision, defendant Weir was driving the pickup truck and defendant Spencer and a man named Harry Scott were riding in that vehicle with him. At the scene of the collision, U. S. Highway 30 is divided by an eighteen-foot traffic island, with two lanes for eastbound traffic and two lanes for westbound traffic, and this four-lane highway is intersected at right angles by State Highway 130. Plaintiff's car,

driven by Robert A. Husted, was traveling east on U. S. Highway 30 and as it came into the intersection area it was struck by the pickup truck which was traveling south.

The appellant attacks the judgment against it on six separate grounds: (1) That as a matter of law, Weir, the driver of the pickup, was not such an employee engaged in the service of the appellant as to make applicable the doctrine of Respondeat Superior; (2) Spencer was not such an adverse party as permitted his cross-examination under the statute; (3) that the court prejudicially permitted certain testimonies to be given over appellant's objection; (4) because the court sustained the plaintiffs' demurrer to interrogatories propounded by the appellant; (5) that the claim of Robert A. Husted was barred because he was guilty of contributory negligence; and (6) the damages awarded were excessive.

As the first of these grounds seems to be more insistently stressed by appellant and involves many factual considerations relevant to other grounds, we give it immediate attention.

The evidence is clear that defendant Spencer was an employee of the company, and, although there was some variance in the testimony as to his authority, it seems plain to us that at least during the absence of his superiors, which was the instant case, he was in charge of the ranch and authorized to do whatever seemed necessary in connection with the ranch's business. Through its proper officer the company adopted the services of intermediaries to instruct Spencer to go to the road intersection, hereinabove described, pick up one Harry Scott, a new employee of the company, and take him to the company's ranch where he

was to work. Although the company's president testified he specified a company vehicle should be used because it was insured and that he had previously instructed company employees not to use any except company equipment because of its being insured, Spencer denied he received any such instruction or that he was given any message or instruction other than to pick up Scott at the road intersection.

Prior to Spencer's receiving this word, Weir, who had previously worked at the ranch, applied to the president of the appellant company for re-employment on the ranch. Although Weir did not possess all the qualifications of the type of employee needed by the ranch, Weir was employed at a wage of $150 per month as a ranch hand to perform such services as might be required of him.

Under these circumstances, we have no doubt but that this arrangement constituted Weir an employee of the ranch company. In carrying out the company's order to go and get Scott, Spencer was free to use such reasonable means as he deemed proper. The evidence shows the company owned an insured vehicle which was available to Spencer at the ranch. However, it also appears this vehicle was out of repair and in the opinion of Spencer it was unfit to undertake the trip in the face of the adverse road and weather conditions existing at the time. Consequently, when the new employee Weir offered the use of his own pickup truck which was in better condition, Spencer accepted the same and, for reasons unnecessary to recount at length here, Spencer also decided that Weir should accompany him on the trip and alternate with him in driving the Weir car.

From these facts it seems obvious that Weir was acting in the line of his employment when driving the

pickup truck on the mission directed by company orders, and that the Weir pickup was being properly used in company service at the time of the collision. Nothing more than this is necessary to invoke the doctrine of Respondeat Superior and to make the company liable for the negligence of its employee Weir.

As has been indicated above, the limit of the instruction given Spencer by the company was merely to pick up Scott. The company had adopted the services of intermediaries to convey its instructions. Independent of what the company told these agents, only the actual instruction received by Spencer is important to measure the extent of his authority to utilize such reasonable means as he considered necessary or advisable to obey the company's orders. To him those orders were simply to pick up Scott. The nature of his position with the company gave Spencer reasonable discretion as to how he would carry out his superior's orders. The means he used, including both the services of Weir as well as the vehicle chosen, were neither unusual nor unreasonable under the circumstances. The company had the right to control and direct Spencer's actions even to the point of limiting him to the use of company-insured vehicles only, but according to Spencer no such limitation was ever placed upon him and the jury was privileged to accept his version of the matter. This leaves the company with no just complaint when Spencer adopted what seemed to him the best means of carrying out the company's order. The nature of Weir's employment made him subject to the direction and control of Spencer and required him to accompany Spencer on the trip and even to drive the pickup when so directed. When he followed Spencer's orders in performing this service in behalf of the company, Weir was acting in the line of his employment.

The case of Stockwell v. Morris, 46 Wyo. 1, 9, 22 P.2d 189, 191, so heavily relied upon by appellant, presented a state of facts so different from those before us that it is of no value to appellant, but rather tends to emphasize the difference in a case like this from that where there is an agency more nearly of the nature of an independent contractor. There the court said:

"* * * And the gist of the controversy herein is as to whether the principal is liable for its agent's negligence while engaged in a more or less necessary physical act which is incidental to the performance of his general duties, or, if we must use a special term, whether or not the agent, while engaged in that physical act, must be regarded in the nature of an independent contractor.* * *"

By no conceivable stretch of imagination can Weir be regarded in this case as an independent contractor. He became an employee of the company through the act of its president and his driving of the truck on the company's errand was not merely incidental to his employment, but was the very type of service for which he was specifically employed; namely, to do whatever he was told to do in the company's service.

While the message from the company to Spencer failed to exercise that specific type of control which was available to it, the orders given Weir by Spencer on behalf of the company was the exercise of that control which made Weir through Spencer the true servant of the company. Weir was neither an independent contractor nor a volunteer but a servant of the appellant. This made the company liable for his negligent acts while serving the company. See Cumming v. Automobile Crank Shaft Corporation, 232 Mich. 158, 205 N.W. 133; Rice v. Garl, 2 Wash.2d 403,

98 P.2d 301. Nor is the fact that the vehicle used belonged to the employee, or that it was used without pay, or that its use was unnecessary to his employment sufficient to bar recovery against his employer. The company through Spencer had the right to adopt its use when made available through the owner's offer. See Curcic v. Nelson Display Co., 19 Cal.App.2d 46, 64 P.2d 1153; Kohl v. Albert Lifson & Sons, 128 N.J.L. 373, 25 A.2d 925, 140 A.L.R. 1146; Knapp v. Standard Oil Co. of California, 156 Or. 564, 68 P.2d 1052; Cook v. Sanger, 110 Cal.App. 90, 293 P. 794; Rankin v. W. U. Tel. Co., 147 Neb. 411, 23 N.W.2d 676, 166 A.L.R. 873.

We must, therefore, conclude that any negligence in Weir's operation of the pickup which caused damage or injury to the plaintiffs or any of them created a liability of the defendant-appellant ranch company.

Defendant Spencer was first called by the plaintiffs for cross-examination as an adverse witness under the provisions of § 3-2604, W.C.S. 1945. He was next called by appellant for cross-examination as an adverse witness under the provisions of the same statute and finally he testified in his own behalf.

Appellant complains it was improper for the court to permit this cross-examination by plaintiffs because Spencer in his answer had made damaging admissions. The admissions referred to are: (1) That the appellant was a corporation organized under the laws of this State; (2) that he and Weir were agents, servants and employees of the appellant; (3) that he and Weir pursuant to direction of appellant proceeded in a 1952 pickup truck to the intersection herein described to pick up a prospective employee of appellant and convey him to the appellant's ranch; and (4) that

on the day of the collision, the plaintiff Robert A. Husted drove a 1949 automobile easterly along Highway 30 at the point of the described intersection and that plaintiff was accompanied by his wife and infant son. Appellant also says other testimony given by Spencer during his cross-examination is far from evidencing antagonism or adversity to the plaintiffs. What "other testimony" Spencer gave which evidenced that he was not an adverse party to plaintiffs is not pointed out to us unless it was because in his statement with respect to Weir's having drunk two or three cans of beer the night before Spencer said, "I don't think the amount of beer he drank would last him from the night before until the next day", and appellant feels this was in conflict with a highway patrolman who testified that after the collision Weir said he had been drinking the night before and never went to bed; had taken his last drink at 3:00 a.m.; had quite a bit to drink and was still feeling the effects of the drink; and that the officer smelled liquor on Weir's breath.

This court has unequivocally stated in Huber v. Thomas, 45 Wyo. 440, 451, 19 P.2d 1042, 1045, that the true test of the right to cross-examine under the statute is whether the party called is in fact adverse to the one calling him as a witness. We do not depart nor deviate in the least from this rule when we say that neither the answer pleaded by Spencer nor his testimony related above indicated in the least his friendliness to the plaintiff or his unfriendliness to the appellant. Bearing in mind that in the Huber case, supra, the same court cautioned, "Necessarily in the administration of the law the trial judge will guide the matter in the exercise of a sound discretion", we are not disposed to say in this instance that the court's discretion was abused. Spencer was a co-defendant

with appellant and the testimony he gave, if at all damaging, was as hurtful to him as it was to the appellant, and we do not assume he was unfriendly to himself. Furthermore, the admitted matter pleaded was also testified to by other witnesses and the same is true of all, or practically all, of Spencer's testimony. Even if there remained any doubt about this in our minds, the appellant seems to have lost its right to now complain because appellant failed to follow up its objection on that score. Appellant elected to call Spencer on its own account for similar cross-examination, and so had ample opportunity to impeach or discredit him had that been possible. Spencer also testified on direct examination in his own behalf, thus giving appellant further opportunity to subject him to additional searching cross-inquiry. The brief cross-examination attempted by appellant, however, failed to alter Spencer's testimony. We do not think this objection of the appellant is well taken.

Appellant says the court prejudicially permitted improper testimonies to be given over its objection.

An examination of the record with respect to each of the court's rulings upon appellant's objections to questions propounded and upon its motions for dismissal or directed verdict convinces us that those objections were without merit.

To detail these questions and the objections thereto, or to recount at length evidence before the jury at the time the motions were made, would unnecessarily encumber this opinion.

One inquiry permitted a witness to relate what defendant Weir had stated to him. This was a proper question. The basis of objections to a group of ques-

tions that they were improperly asked upon the cross-examination of Spencer under the statute has already been decided adversely against appellant. Another objection, asking plaintiff June Husted if she had expected to continue with the dramatic activities in which she had previously engaged, was not improper, as this bore upon the effect the scarring of her face would have upon her future opportunity to pursue that activity and to capitalize upon her dramatic abilities for which the evidence showed she had certain talent. The court's ruling at the time the motions were made was also correct because there was then sufficient evidence to go to the jury.

Similarly the claim that the court erred in sustaining plaintiffs' demurrers to appellant's interrogatories does not constitute reversible error. Briefly the interrogatories inquired the speed at which Husted drove his car at the intersection; the seating arrangement of the car's occupants and its contents; whether written statements of Spencer or other employee, agent, servant or officer of appellant were taken, with request for a copy of the same; the basis for calculating the amounts claimed for damage to Husted's automobile; the items of personal property alleged to be destroyed or lost and their value; the items of hospital, doctor and medical expenses with names and addresses of the doctors; who paid those expenses; the elements of physical pain and mental anguish; the money apportionment of each and the theory upon which Husted claimed exemplary and punitive damages against the appellant. Like inquiry was made of plaintiffs June R. Husted and the guardian of the infant plaintiff Todd Ellery Husted.

It is unnecessary for us to decide whether the court erred in sustaining the demurrers because as to each

of the matters inquired about, with the possible exception of plaintiffs' theory and other immaterial matters, there was testimony and evidence produced at the trial which gave full information concerning them, and it is apparent from the record that the appellant was not mislead, misinformed or that its defense suffered in the least from the failure to have its interrogatories answered. Under such circumstances, even had there been any error in sustaining the demurrers, it was not prejudicial and consequently not cause for reversal.

Appellant rests its claim that plaintiff Robert A. Husted was guilty of contributory negligence upon the fact that when Husted was about 1,000 feet from the intersection he saw the pickup truck about 100 feet north of the highway opposite the intersection and observed it approaching U. S. Highway 30. Appellant concludes therefrom that this warned Husted of approaching danger but that he did nothing to reduce the speed of his automobile to avoid or avert the collision. The trouble with this contention is that it fails to take into account the whole of the evidence as to what occurred. It is practically undisputed that Husted was driving his automobile at a lawful speed of approximately 50 miles per hour as he approached the intersection; that when he was within 1,000 feet of the intersection he observed the pickup truck about 100 feet north of U. S. Highway 30 driving quite slow and headed south and that he assumed the pickup would stop when it came to the highway. He next noticed the pickup crossing the two west lanes of the highway and then assumed the truck would stop in the center of the 18-foot island before entering the two eastbound lanes; that in attempting to avoid any chance of accident from any "overhang" of the truck beyond the island area, he pulled over to the extreme

right-hand east lane when he realized for the first time the pickup was not going to stop; that he honked his horn, decided he could not go off the road without turning over, then applied his brakes and was swerving to the right when the collision occurred.

The evidence is also undisputed that on the north side of U. S. Highway 30 at its intersection with Wyoming State Highway 130 there was a stop sign facing to the north and located on the right-hand side of the southbound traffic on State Highway 130. Furthermore, the court properly gave the jury instruction as to the laws of this State respecting observance of highway stop signs which included the following from § 64, ch. 225, S. L. of Wyoming, 1955 (§ 60-664, W.C. S. 1957 Supp.) :

"(a) The driver of a vehicle shall stop as required by Section 85 of this Act at the entrance to a through highway and shall yield the right-of-way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right-of-way to the vehicle so proceeding into or across through highway.

"(b) The driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed."

And from § 85, ch. 225, S. L. of Wyoming, 1955 (§ 60-685, W. C. S. 1957 Supp.) :

"(a) The Superintendent with reference to State highways and local authorities with reference to other highways under their jurisdiction may designate through highways and erect stop signs at specified entrances thereto or may designate any intersection as a stop intersection and erect like signs at one or more entrances to such intersection.

"(b) Every said sign shall bear the word 'Stop' in letters not less than 8 inches in height.

"(c) Every stop sign shall be erected as near as practicable to the nearest line of the cross walk on the near side of the intersection or, if there is no cross walk, then as close as practicable to the nearest line of the roadway.

"(d) Every driver of a vehicle approaching a stop sign shall stop before entering the cross walk on the near side of the intersection or in the event there is no cross walk shall stop at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection except when directed to proceed by a police officer or traffic-control signal."

Although the evidence shows Husted saw the Weir-driven vehicle at a time when Husted could have stopped before attempting to cross the intersection, he had a right to assume as he did that before coming onto the through Highway U. S. 30, Weir would bring his pickup to a stop. His belief that Weir would so stop is justified by the law of this State which required that Weir would do so. Even after he saw Weir coming into the intersection area on the west-going two lanes, he still had reason to believe Weir would stop in the island area before entering the east-going two lanes where Husted's car was traveling. By the time it became apparent to Husted that Weir was not going to stop, it was too late for Husted to do anything

more than he did do to avoid the crash. See Keir v. Trager, 134 Kan. 505, 7 P.2d 49, 81 A.L.R. 181; Wilson v. Cyrus, 180 Kan. 836, 308 P.2d 98; Bailey v. Slentz, 10 Cir., 189 F.2d 406; Nystuen v. Spokane County, 194 Wash. 312, 77 P.2d 1002; Ambra v. Woolsey, 55 Cal.App.2d 104, 130 P.2d 152. See also Annotations, 164 A.L.R. 16, 103, 251, and cases cited.

The evidence and instruction submitted to the jury together with a proper instruction on contributory negligence and their verdict which implied a finding favorable to Husted will not be disturbed, as it was for the jury alone to determine if he was at fault. See Borzea v. Anselmi, 71 Wyo. 348, 364, 258 P.2d 796, 800.

The final error claimed is that the damages awarded were excessive. As to damages awarded Robert A. Husted, it is claimed that inasmuch as the parties had stipulated the gross value of his property loss was $418, the instruction of the court that plaintiff was entitled to recover not to exceed the sum of $600 for property loss, which was the amount asked by Husted in his petition, was reversible error. Appellant says that because $10,000 general damages, $145 hospital and medical expenses and $600 damages for loss of personal property were claimed by Husted, it must be presumed that all of those elements made up the jury's verdict of $1,000 rendered in Husted's behalf. In consequence, appellant seems to suggest that the instruction was misleading so that, for instance, the jury may have given the full $600 for property loss and the balance for general damage and hospital and medical expense. Such speculation is not warranted and appellant's position in this respect is untenable. While the instruction may be subject to some criticism

in the face of the stipulation, its giving does not in the light of the verdict given constitute reversible error.

We fail to find even the slightest merit in the assertion that the damages awarded June R. Husted were excessive. The evidence showing loss of a part of her cheek with only partial repair obtained after three surgical attempts, with certainty of further plastic surgery necessary and grave doubt but that there will be a permanent disfigurement of a young twenty-year old wife and mother, tells its own story of physical pain and suffering and the mental anguish this young lady has already undergone and will endure in future years. The damage awarded her is not excessive.

The award to the infant plaintiff is not seriously contested and needs no comment from us.

The judgment of the court will be affirmed.

AFFIRMED.