Wynn G. CONDICT, Appellant (Plaintiff),

v.

Alden CONDICT, Appellee (Defendant).

No. 5812.

Supreme Court of Wyoming.

June 7, 1983.

John E. Stanfield and John B. Scott of Smith, Stanfield & Scott, Laramie, for appellant.

William F. Downes of Brown, Drew, Apostolos, Massey & Sullivan and Michael Golden of Williams, Porter, Day & Neville, P.C., Casper, for appellee.

Sharon A. Fitzgerald and Sylvia Lee Hackl, Cheyenne, for amicus curiae Committee of the Wyoming Trial Lawyers Ass'n.

Before ROONEY, C.J., and RAPER, THOMAS, ROSE and BROWN, JJ.

ROSE, Justice.

This appeal comes from the granting of appellee's motion for a directed verdict. The lawsuit between appellant-plaintiff Wynn Condict and appellee-defendant Alden Condict was tried on theories of negligence, intentional tort, and respondeat superior. At the close of plaintiff's case, the judge granted a directed verdict in favor of the appellee on the ground that appellant Wynn Condict had failed to prove that Alden Condict's employee, Jenkins, was within the "scope of his employment" at the time of the alleged tortious conduct. Appellant presents these issues for review:

1. Did the trial court err in granting appellee's motion for directed verdict?

2. In excluding certain evidence, did the trial court fail to properly apply our decision in *Campen v. Stone,* Wyo., 635 P.2d 1121 (1981)?

We will reverse and remand for a new trial.

## FACTS

Appellant Wynn Condict is the nephew of appellee Alden Condict who, with his brother, Winthrop Condict, operates a ranch in Carbon County, Wyoming.

In 1978, disagreements between Alden and Winthrop caused them to divide their operations in a way which resulted in each brother employing and paying the wages of his own workers, while the two factions continued to ranch the jointly held proper-

ty. The discord between the brothers, their families and employees resulted in various assaultive conflicts but, in view of the posture of this appeal, it will not be necessary to set out the details of these prior incidents.

Appellant's claim arises from an incident in which he was involved with Ted Jenkins, an employee of Alden Condict. There is an area on the Condict ranch where gas pumps are located close to a bridge, and, because of its weakened condition, this bridge had been designated for use by lighter-weight vehicles only. On the morning in question, Wynn Condict was at the gas pumps assigning his father's employees their various tasks for the day. At the same time, Ted Jenkins and another employee of Alden Condict were gassing two vehicles, one of which was a heavy army-surplus six-by-six truck utilized in haying operations. An altercation occurred between Jenkins and Wynn Condict when Jenkins made known his intent to drive the large army truck over the bridge, it being Wynn Condict's position that this was one of the heavy vehicles for which the bridge was not to be used. Wynn Condict became alarmed because his new pickup truck was blocking the bridge and he proceeded to back his pickup across the bridge. In the meantime, Jenkins had commandeered the army-surplus vehicle, crashed it through a gate and headed toward Wynn's vehicle. Somewhere near the end of the bridge or just off the other side, Jenkins rammed the pickup with the six-by-six truck.

As a result of this impact, appellant claims that he suffered severe injury to his back, which resulted in his bringing a personal-injury action against Jenkins and Alden Condict, as Jenkins' employer, in which he sought both compensatory and punitive damages. Jenkins was never served, and thus the trial, which culminated in a directed verdict, was had with Alden Condict as the only defendant.

### THE DIRECTED VERDICT

In directing a verdict for Alden Condict, the trial judge held that plaintiff had failed to prove that Jenkins was acting in the scope of his employment at the time of the incident. In reaching this decision, the judge commented:

" * * * What I'm saying is simply this: that if—you say that Ted Jenkins was engaged in the scope of his employment, and in going to the hayfields, then I think that it is certainly demonstrated by this evidence that he had to deviate from that scope when he took control of the six by six and did something that the evidence indicates to me Alden Condict didn't even know about at that time, much less thereby be presented with the opportunity to say, 'fine, do it. Go ahead. I recognize that you have done this and I condone your actions.' And that simply hasn't been demonstrated through the evidence at all. The act described in this evidence clearly shows to me, without any support of other evidence to the contrary, that Ted Jenkins was acting upon his own action, took matters into his own hands, exercised control over the instrumentalities which he used to create the mischief that resulted when he was given a clear choice to drive whatever it was, 50 feet or 50 yards, to cross the stream and to continue in pursuit of the interest of his employment. And, so, to me it follows from there that if Alden Condict—now, Alden Condict obviously, apparently the evidence shows, said—or I think it's Ted Jenkins that said, 'I'll do anything Alden Condict says.' Well, obviously, inference from that statement that, 'I'll do anything that is within the lawful scope of my employment for him' certainly does not mean, nor can it be reasonably interpreted to mean that 'I'll do any criminal act that Alden Condict tells me to do.' *And I think that Alden Condict must specify, and I think the evidence must show that Alden Condict specifies that, 'you take that six by six and do whatever you want with it, including driving into that pickup' or words to that effect.* In other words, to create by his authority, the atmosphere for which the damage was done in this case. Now, absent of that kind of proof, I think there has been

deprivation of evidence sufficient to present this jury with a question of punitive damages. And I don't think that in the given circumstances, as presented by this evidence, that he was acting within the scope of his employment. Now, this is, and I so rule." (Emphasis added.)

Appellant argues that, by holding that the evidence must show that Alden Condict specifically authorized Ted Jenkins to commit the alleged tortious act, the trial judge erroneously applied the rules announced by this court in *Sage Club v. Hunt,* Wyo., 638 P.2d 161 (1981). He also urges that the evidence introduced at trial was sufficient to make out a prima facie case under that decision. We agree with the appellant's contentions.

In *Combined Insurance Company of America v. Sinclair,* Wyo., 584 P.2d 1034, 1041 (1978), we discussed the rules governing those situations in which an employee can be thought about as acting within the scope of his or her employment:

" * * * Whether or not he was within the scope of his employment at the time of the accident became a fact question for the jury. *Barnes v. Fernandez,* Wyo., 526 P.2d 983, 985. The question is one of law only when the conduct in question is shown clearly to be within or without the scope of employment. *Sun Land & Cattle Co. v. Brown,* Wyo., 394 P.2d 387, 390. And see, *Husted v. French Creek Ranch, Inc.,* 79 Wyo. 307, 333 P.2d 948. The issue was not so clear-cut here as to warrant its disposal as a matter of law.

 \* \* \* \* \* \*

"The rule is that one will be held to be within the scope of his employment when the employee is engaged in an activity which has a multiple purpose, and it is sufficient that one of the purposes is employment-related. The rule from Prosser on Torts, 4th Ed., p. 461 is

" ' . . . that in general the servant's conduct is within the scope of his employment if it is of the kind which he is employed to perform, occurs substantially within the authorized limit of time and space, and is actuated, *at least*

*in part,* by a purpose to serve the master.'

"Addressing the kind of conduct within scope of authority, Restatement of Agency, 2nd Ed., § 229, says:

" '(1) To be within the scope of employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.'

"Again, where the conduct is actuated by a dual purpose—partly in behalf of the master and partly to serve the interest of the employee—the employee will be within the scope of his employment. Restatement of Agency, 2nd Ed., § 236."

In *Combined Insurance Company of America* we were concerned with a claim that the servant had *negligently* injured a third party while acting for the master. Not until our decision in *Sage Club v. Hunt,* supra, did we decide whether or not similar rules were applicable when an employee *intentionally* injures another. In *Sage Club,* we held that these rules were applicable where an intentional tort was in issue:

"This court has held that an employer may be held liable for the negligent acts of an employee acting within the scope of employment, *Gill v. Schaap,* Wyo., 601 P.2d 545 (1979); *Miller v. Reiman-Wuerth Company,* Wyo., 598 P.2d 20 (1979); *Combined Insurance Company of America v. Sinclair,* Wyo., 584 P.2d 1034 (1978); and *Stockwell v. Morris,* 46 Wyo. 1, 22 P.2d 189 (1933). We have not, however, had occasion to rule on whether an employer may be held responsible for the intentional tort of an employee. The majority rule, in fact the universally accepted rule, holds employers liable for the intentional torts of employees committed within the scope of employment. Prosser, Law of Torts, § 70, p. 464 (4th ed., 1971). The rule is a matter of economic and social policy, based both on the fact that the employer has the right to control the employee's actions and that the employer can best bear the loss as a cost of doing business." 638 P.2d at 162.

▆▆▆ Stated succinctly, in *Sage Club v. Hunt,* supra, we embraced a rule of law which holds an employer liable for the intentional torts of his employee committed while the employee is acting, at least in part, in furtherance of the employer's interests. We also noted in that case that an important factor in deciding the principal's liability for his agent's intentional torts is whether the "use of force is not unexpectable by the master." 638 P.2d at 163, citing Restatement (Second), Agency 2d § 228(1)(d), p. 504 (1958). However, in order for a jury to assess liability, the plaintiff need not prove that the employer foresaw the precise act or exact manner of injury as long as the general type of conduct may have been reasonably expected. 638 P.2d at 163.

▆▆▆ Applying these rules to this litigation, we are led to the conclusion that the trial judge erroneously found that appellant Condict had failed to discharge his burden of proof. According to *Sage Club v. Hunt,* supra, the appellant was obliged to establish that a question of fact existed as to whether Jenkins was acting within the scope of his employment at the time of the incident in question. It was not his obligation to produce evidence, either direct or circumstantial, to the effect that Alden Condict authorized Jenkins to ram the six-by-six truck into Wynn Condict's vehicle. Appellant's burden was to show that when Jenkins intentionally rammed the pickup he, Jenkins, was then engaged, at least in part, in furthering Alden Condict's interests and that Jenkins' acts were not outside the realm of foreseeability. Appellant, under *Sage Club v. Hunt,* was not required to show Alden's authorization and consent in the specific tortious activity, or that Jenkins' specific conduct was foreseeable, but only that Jenkins committed the tort while at least partially engaged in a task for which he was employed and with respect to which Alden Condict could foresee that force might be used by Jenkins. According to the record,[1] which shows that Jenkins was on his way to perform haying operations when the incident occurred, we find that appellant established a fact issue for the jury as to scope of employment and Alden Condict's liability for the intentional acts of Jenkins. Under applicable rules, it was error for the trial court to take the case from the jury. *Vassos v. Roussalis,* Wyo., 658 P.2d 1284, 1286–1287 (1983); *Town of Jackson v. Shaw,* Wyo., 569 P.2d 1246 (1977); *Carey v. Jackson,* Wyo., 603 P.2d 868 (1979).

## CAMPEN v. STONE, SUPRA, REVISITED

Although not necessary for a resolution of this appeal, given our prior disposition, we will discuss what we perceive to be a misapplication of the rules of *Campen v. Stone,* supra, 635 P.2d 1121.[2] We address this issue because of the likelihood that similar questions will arise on retrial. *Rocky Mountain Oil and Gas Association v. State,* Wyo., 645 P.2d 1163 (1982); *Madison v. Marlatt,* Wyo., 619 P.2d 708 (1980); *McGuire v. McGuire,* Wyo., 608 P.2d 1278 (1980).

1. A corollary issue was addressed in the briefs in this case concerning a pretrial motion in limine granted by the court. This motion precluded the appellant from introducing evidence concerning incidents of misconduct and strife that occurred between the Alden and Winthrop Condict factions prior to the truck-ramming episode. Because not all of these incidents involved Jenkins personally, the trial court considered them irrelevant and determined that all claims for damages were to be decided as a result of the truck-ramming incident only. Having reviewed appellant's offers of proof, we conclude that much of the evidence of past conduct on the part of Alden Condict's employees was erroneously excluded. Such evidence is indeed relevant to the question of whether appellee Alden Condict could foresee that Jenkins might use force in carrying out his responsibilities. We realize that such questions of admissibility are generally left to the discretion of the trial judge, *Canyon View Ranch v. Basin Electric Power Corporation,* Wyo., 628 P.2d 530 (1981). However, given the issues with which this litigation is concerned, the exclusion of this evidence constituted an abuse of discretion.

2. Appellant has asked us to reconsider the holding in Campen, but we decline that invitation. Although the author of this opinion dissented in that case, the bifurcated proceeding discussed therein is now the law of this state and we will abide by it.

 The record reflects some confusion with respect to the procedures required by *Campen v. Stone,* supra, in those situations where a claim for punitive damages is presented and the employer of the tort-feasor is sought to be held liable.[3] Under *Campen v. Stone,* supra, an employer can be held liable for punitive damages arising out of an employee's willful or wanton act if the plaintiff is able to prove the following:

 1. The particular act or conduct was authorized by the employer or a managerial agent; or

 2. The employee was unfit, and the employer or a managerial agent acted recklessly in employing or retaining the employee; or

 3. The employee was employed in a managerial capacity and was acting within the scope of employment at the time of the act; or

 4. The employer or a managerial agent ratified or approved the employee's act. 635 P.2d at 1125, citing Restatement, Torts 2d, § 909 and Restatement, Agency 2d, § 217C.

The claimant need only establish one of the above criteria and the jury need only find one is proven in order to hold the employer vicariously liable for punitive damages arising out of the employee's tortious activity. *Campen* requires these issues be submitted to the jury during the first stage of the proceedings. Thus, in the present case, the issues to be tried in the initial aspect of the bifurcated proceedings were these: first, were Jenkins' acts committed while he was within the scope of his employment? and, second, did the alleged tortious conduct warrant the imposition of punitive damages against both the employee and the employer? As to the second issue, it was necessary for the trial court to admit all evidence pertaining to whether or not Alden Condict had authorized Jenkins' conduct; whether or not Alden Condict had been reckless in hiring or keeping Jenkins in his employ; whether or not Jenkins was acting in a managerial capacity; or whether or not Alden Condict ratified or approved of Jenkins' conduct. If a jury were to conclude that one of the four criteria was proven, then the court was obligated to conduct the second aspect of the bifurcated trial in which the *only* issue for resolve is the *amount* of punitive damages to be awarded. See: 635 P.2d at 1127–1132. These are the bifurcation requirements mandated by *Campen v. Stone,* supra.

 Applying the directives of Campen to the facts of and rulings in this case, we conclude that the trial court erred in excluding much of the evidence concerning past conflicts between the two Condict brothers factions. The trial court was, of course, correct in holding that it was necessary to resolve the question of whether punitive damages were in fact available at all with respect to the truck-ramming incident on the bridge; however, the evidence of prior controversial and assaultive incidents was relevant to the question which asks whether Alden Condict authorized or approved of Jenkins' conduct, and/or whether Alden Condict recklessly hired or continued the employment relationship with Jenkins. This evidence should have been made available to the jury in the first phase of the trial and the only evidence inadmissible under *Campen v. Stone,* supra, was that which concerned Alden Condict's financial circumstances.

Reversed and remanded for a new trial.

---

**3.** Appellant's complaint attempted to present an independent claim for punitive damages against Alden Condict without claiming that Alden Condict had jointly participated in the truck-ramming incident alleged to have caused appellant to suffer compensatory damages. We note that punitive damages are not recoverable when compensatory damages are not awarded. *Cates v. Barb,* Wyo., 650 P.2d 1159 (1982).